CELOTEX CORP. *v.* EDWARDS ET UX.

No. 93–1504.   Argued December 6, 1994—Decided April 19, 1995

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-
NOR, SCALIA, KENNEDY, SOUTER, THOMAS, and BREYER, JJ., joined.
STEVENS, J., filed a dissenting opinion, in which GINSBURG, J., joined,
*post*, p. 313.

*Jeffrey W. Warren* argued the cause for petitioner. With
him on the briefs were *John R. Bush, Christine M. Polans,
Baldo M. Carnecchia, Jr., Stephen A. Madva,* and *Howard
J. Bashman.*

*Brent M. Rosenthal* argued the cause for respondents.
With him on the brief was *Frederick M. Baron.**

CHIEF JUSTICE REHNQUIST delivered the opinion of the
Court.

The United States Court of Appeals for the Fifth Circuit
held that respondents should be allowed to execute against
petitioner's surety on a supersedeas bond posted by peti-
tioner where the judgment which occasioned the bond had
become final. It so held even though the United States
Bankruptcy Court for the Middle District of Florida pre-
viously had issued an injunction prohibiting respondents

---

*Robert B. Millner* and *Lorie A. Chaiten* filed a brief for Northbrook
Property and Casualty Insurance Co. as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the Association
of Trial Lawyers of America by *Jeffrey Robert White, J. Conard Metcalf,*
and *Larry S. Stewart;* and for the New York Clearing House Association
by *Richard H. Klapper* and *James S. Rubin.*

*Larry L. Simms* filed a brief for Aetna Casualty and Surety Co. as
*amicus curiae.*

from executing on the bond without the Bankruptcy Court's permission. We hold that respondents were obligated to obey the injunction issued by the Bankruptcy Court.

## I

In 1987 respondents Bennie and Joann Edwards filed suit in the United States District Court for the Northern District of Texas against petitioner Celotex Corporation (and others) alleging asbestos-related injuries. In April 1989 the District Court entered a $281,025.80 judgment in favor of respondents and against Celotex. To stay execution of the judgment pending appeal, Celotex posted a supersedeas bond in the amount of $294,987.88, with Northbrook Property and Casualty Insurance Company serving as surety on the bond. As collateral for the bond, Celotex allowed Northbrook to retain money owed to Celotex under a settlement agreement resolving insurance coverage disputes between Northbrook and Celotex.

The United States Court of Appeals for the Fifth Circuit affirmed, issuing its mandate on October 12, 1990, and thus rendering "final" respondents' judgment against Celotex. *Edwards* v. *Armstrong World Industries, Inc.,* 911 F. 2d 1151 (1990). That same day, Celotex filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida.[1] The filing of the petition automatically stayed both the continuation of "proceeding[s] against" Celotex and the commencement of "any act to obtain possession of property" of Celotex.[2] 11 U. S. C. §§ 362(a)(1) and (3).

---

[1] For purposes of this case, we assume respondents' judgment became final before Celotex filed its petition in bankruptcy.

[2] As of the filing date, more than 141,000 asbestos-related bodily injury lawsuits were pending against Celotex, and over 100 asbestos-related bodily injury cases were in some stage of appeal, with judgments totaling nearly $70 million being stayed by supersedeas bonds that Celotex had posted.

On October 17, 1990, the Bankruptcy Court exercised its equitable powers under 11 U. S. C. § 105(a) and issued an injunction (hereinafter Section 105 Injunction) to augment the protection afforded Celotex by the automatic stay. In pertinent part, the Section 105 Injunction stayed all proceedings involving Celotex "regardless of . . . whether the matter is on appeal and a supersedeas bond has been posted by [Celotex]." App. to Pet. for Cert. A–28.[3] Respondents, whose bonded judgment against Celotex had already been affirmed on appeal, filed a motion pursuant to Federal Rule of Civil Procedure 65.1 in the District Court seeking permission to execute against Northbrook on the supersedeas bond. Both Celotex and Northbrook opposed this motion, asserting that all proceedings to enforce the bonds had been enjoined by the Bankruptcy Court's Section 105 Injunction. Celotex brought to the District Court's attention the fact that, since respondents had filed their Rule 65.1 motion, the Bankruptcy Court had reaffirmed the Section 105 Injunction and made clear that the injunction prohibited judgment creditors like respondents from proceeding against sureties without the Bankruptcy Court's permission:

> "Where at the time of filing the petition, the appellate process between Debtor and the judgment creditor had been concluded, the judgment creditor is precluded from proceeding against any supersedeas bond posted by Debtor without first seeking to vacate the Section 105

---

[3] The Bankruptcy Court noted that, upon request of a party in interest and following 30 days' written notice and a hearing, it would "consider granting relief from the restraints imposed" by the Section 105 Injunction. App. to Pet. for Cert. A–28. Several of Celotex's bonded judgment creditors whose cases were still on appeal filed motions requesting that the Bankruptcy Court lift the Section 105 Injunction (1) to enable their pending appellate actions to proceed and (2) to permit them to execute upon the bonds once the appellate process concluded in their favor. The Bankruptcy Court granted the first request but denied the second. *In re Celotex*, 128 B. R. 478, 484 (1991) *(Celotex I)*.

stay entered by this Court." *In re Celotex*, 128 B. R. 478, 485 (1991) *(Celotex I)*.

Despite the Bankruptcy Court's reaffirmation and clarification of the Section 105 Injunction, the District Court allowed respondents to execute on the bond against Northbrook.[4]

---

[4] Two days after the District Court entered its order, the Bankruptcy Court ruled on motions to lift the Section 105 Injunction that had been filed by several bonded judgment creditors who, like respondents, had prevailed against Celotex on appeal. The Bankruptcy Court again reaffirmed the Section 105 Injunction and it again explained that the injunction prohibited judgment creditors like respondents from executing on the supersedeas bonds against third parties without its permission. *In re Celotex*, 140 B. R. 912, 914 (1992) *(Celotex II)*. It refused to lift the Section 105 Injunction at that time, finding that Celotex would suffer irreparable harm. It reasoned that if the judgment creditors were allowed to execute against the sureties on the supersedeas bonds, the sureties would in turn seek to lift the Section 105 Injunction to reach Celotex's collateral under the settlement agreements, possibly destroying any chance of a successful reorganization plan. See *id.*, at 914–915.

To protect the bonded judgment creditors, the Bankruptcy Court ordered that: (1) the sureties involved, including Northbrook, establish escrow accounts sufficient to insure full payment of the bonds; (2) Celotex create an interest-bearing reserve account or increase the face amount of any supersedeas bond to cover the full amount of judgment through confirmation; and (3) Celotex provide in any plan that the bonded claimants' claims be paid in full unless otherwise determined by the court or agreed by the claimant. *Id.*, at 917. The Bankruptcy Court also directed Celotex to file "any preference action or any fraudulent transfer action or any other action to avoid or subordinate any judgment creditor's claim against any judgment creditor or against any surety on any supersedeas bond within 60 days of the entry" of its order. *Ibid.* Accordingly, Celotex filed an adversary proceeding against respondents, 227 other similarly situated bonded judgment creditors in over 100 cases, and the sureties on the supersedeas bonds, including Northbrook. See Second Amended Complaint in *Celotex Corp.* v. *Allstate Ins. Co.*, Adversary No. 92–584 (Bkrtcy. Ct. MD Fla.). In that proceeding, Celotex asserts that the bonded judgment creditors should not be able to execute on their bonds because, by virtue of the collateralization of the bonds, the bonded judgment creditors are beneficiaries of Celotex asset transfers that are voidable as preferences and fraudulent transfers. See *ibid.* Celotex also

Celotex appealed, and the Fifth Circuit affirmed. *Edwards* v. *Armstrong World Industries, Inc.*, 6 F. 3d 312 (1993) *(Edwards II)*. It first held that, because the appellate process for which the supersedeas bond was posted had been completed, Celotex no longer had a property interest in the bond and the automatic stay provisions of 11 U. S. C. § 362 therefore did not prevent respondents from executing against Northbrook. 6 F. 3d, at 315–317. The court then acknowledged that "[t]he jurisdiction of bankruptcy courts has been extended to include stays on proceedings involving third parties under the auspices of 28 U. S. C. § 1334(b)," *id.*, at 318, and that the Bankruptcy Court itself had ruled that the Section 105 Injunction enjoined respondents' proceeding against Northbrook to execute on the supersedeas bond. *Ibid.* The Fifth Circuit nevertheless disagreed with the merits of the Bankruptcy Court's Section 105 Injunction, holding that "the integrity of the estate is not implicated in the present case because the debtor has no present or future interest in this supersedeas bond." *Id.*, at 320. The court reasoned that the Section 105 Injunction was "manifestly unfair" and an "unjust result" because the supersedeas bond was posted "to cover precisely the type of eventuality which occurred in this case, insolvency of the judgment debtor." *Id.*, at 319. In concluding that the Section 105 Injunction was improper, the Fifth Circuit expressly disagreed with the reasoning and result of *Willis* v. *Celotex Corp.*, 978 F. 2d 146 (1992), cert. denied, 507 U. S. 1030 (1993), where the Court of Appeals for the Fourth Circuit, examining the same Section 105 Injunction, held that the Bankruptcy Court had the power under 11 U. S. C. § 105(a) to stay proceedings against sureties on the supersedeas bonds. 6 F. 3d, at 320.

Celotex filed a petition for rehearing, arguing that the Fifth Circuit's decision allowed a collateral attack on an

---

contends that the punitive damages portions of the judgments can be voided or subordinated on other bankruptcy law grounds. See *ibid.* This adversary proceeding is currently pending in the Bankruptcy Court.

order of the Bankruptcy Court sitting under the jurisdiction of the Court of Appeals for the Eleventh Circuit. The Fifth Circuit denied the petition, stating in part that "we have not held that the bankruptcy court in Florida was necessarily wrong; we have only concluded that the district court, over which we do have appellate jurisdiction, was right." *Id.*, at 321. Because of the conflict between the Fifth Circuit's decision in this case and the Fourth Circuit's decision in *Willis*, we granted certiorari. 511 U. S. 1105 (1994). We now reverse.

## II

Respondents acknowledge that the Bankruptcy Court's Section 105 Injunction prohibited them from attempting to execute against Northbrook on the supersedeas bond posted by Celotex. Brief in Opposition 6, n. 2 (recognizing that the Section 105 Injunction "was intended to, and did, enjoin collection attempts like those made by [respondents] against Northbrook in this case"). In *GTE Sylvania, Inc.* v. *Consumers Union of United States, Inc.*, 445 U. S. 375, 386 (1980), we reaffirmed the well-established rule that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." In *GTE Sylvania,* we went on to say:

> "There is no doubt that the Federal District Court in Delaware had jurisdiction to issue the temporary restraining orders and preliminary and permanent injunctions. Nor were those equitable decrees challenged as only a frivolous pretense to validity, although of course there is disagreement over whether the District Court erred in issuing the permanent injunction. Under these circumstances, the CPSC was required to obey the injunctions out of respect for judicial process." *Id.*, at 386–387 (internal quotation marks, citations, and footnote omitted).

This rule was applied in the bankruptcy context more than 60 years ago in *Oriel* v. *Russell*, 278 U. S. 358 (1929), where the Court held that turnover orders issued under the old bankruptcy regime could not be collaterally attacked in a later contempt proceeding. Respondents acknowledge the validity of the rule but contend that it has no application here. They argue that the Bankruptcy Court lacked *jurisdiction* to issue the Section 105 Injunction, though much of their argument goes to the correctness of the Bankruptcy Court's decision to issue the injunction rather than to its jurisdiction to do so.

The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute. Title 28 U. S. C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U. S. C. § 157(a). Here, the Bankruptcy Court's jurisdiction to enjoin respondents' proceeding against Northbrook must be based on the "arising under," "arising in," or "related to" language of §§ 1334(b) and 157(a).

Respondents argue that the Bankruptcy Court had jurisdiction to issue the Section 105 Injunction only if their proceeding to execute on the bond was "related to" the Celotex bankruptcy. Petitioner argues the Bankruptcy Court indeed had such "related to" jurisdiction. Congress did not delineate the scope of "related to"[5] jurisdiction, but its choice

---

[5] Proceedings "related to" the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U. S. C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate. See 1 Collier on Bankruptcy ¶ 3.01[1][c][iv], p. 3–28 (15th ed. 1994). The first type of "related to" proceeding involves a claim like the state-law breach of contract action at issue in *Northern*

of words suggests a grant of some breadth. The jurisdictional grant in § 1334(b) was a distinct departure from the jurisdiction conferred under previous Acts, which had been limited to either possession of property by the debtor or consent as a basis for jurisdiction. See S. Rep. No. 95–989, pp. 153–154 (1978). We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor, Inc.* v. *Higgins*, 743 F. 2d 984 (1984), that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate," *id.*, at 994; see also H. R. Rep. No. 95–595, pp. 43–48 (1977), and that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate. We also agree with that court's observation that a bankruptcy court's "related to" jurisdiction cannot be limitless. See *Pacor, supra,* at 994; cf. *Board of Governors, FRS* v. *MCorp Financial, Inc.*, 502 U. S. 32, 40 (1991) (stating that Congress has vested "limited authority" in bankruptcy courts).[6]

---

*Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U. S. 50 (1982). The instant case involves the second type of "related to" proceeding.

[6] In attempting to strike an appropriate balance, the Third Circuit in *Pacor, Inc.* v. *Higgins*, 743 F. 2d 984 (1984), devised the following test for determining the existence of "related to" jurisdiction:

"The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* . . . Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*, at 994 (emphasis in original; citations omitted).

The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the *Pacor* test with little or no variation. See *In re G. S. F. Corp.*, 938 F. 2d 1467, 1475 (CA1 1991); *A. H. Robins Co.* v. *Pic-*

We believe that the issue whether respondents are entitled to immediate execution on the bond against Northbrook is at least a question "related to" Celotex's bankruptcy.[7] Admittedly, a proceeding by respondents against Northbrook on the supersedeas bond does not directly involve Celotex, except to satisfy the judgment against it secured by the bond. But to induce Northbrook to serve as surety on the bond,

*cinin*, 788 F. 2d 994, 1002, n. 11 (CA4), cert. denied, 479 U. S. 876 (1986); *In re Wood*, 825 F. 2d 90, 93 (CA5 1987); *Robinson* v. *Michigan Consol. Gas Co.*, 918 F. 2d 579, 583–584 (CA6 1990); *In re Dogpatch U. S. A., Inc.*, 810 F. 2d 782, 786 (CA8 1987); *In re Fietz*, 852 F. 2d 455, 457 (CA9 1988); *In re Gardner*, 913 F. 2d 1515, 1518 (CA10 1990); *In re Lemco Gypsum, Inc.*, 910 F. 2d 784, 788, and n. 19 (CA11 1990). The Second and Seventh Circuits, on the other hand, seem to have adopted a slightly different test. See *In re Turner*, 724 F. 2d 338, 341 (CA2 1983); *In re Xonics, Inc.*, 813 F. 2d 127, 131 (CA7 1987); *Home Ins. Co.* v. *Cooper & Cooper, Ltd.*, 889 F. 2d 746, 749 (CA7 1989). But whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.

[7] The dissent agrees that respondents' proceeding to execute on the supersedeas bond is "related to" Celotex's bankruptcy, *post*, at 318, n. 5, but noting that "only the district court has the power [under 28 U. S. C. § 157(c)(1)] to enter 'any final order or judgment'" in related "[n]on-core proceedings," *post*, at 321–322, the dissent concludes that the Bankruptcy Court here did not possess sufficient "related to" jurisdiction to issue the Section 105 Injunction, *post*, at 322. The Section 105 Injunction, however, is only an *interlocutory stay* which respondents have yet to challenge. See *infra*, at 313. Thus, the Bankruptcy Court did not lack jurisdiction under § 157(c)(1) to issue the Section 105 Injunction because that injunction was not a "final order or judgment."

In any event, respondents have waived any claim that the granting of the Section 105 Injunction was a noncore proceeding under § 157(c)(1). Respondents base their arguments solely on 28 U. S. C. § 1334, and concede in their brief that the "bankruptcy court had subject matter jurisdiction to issue orders affecting the bond, then, only if the proceedings on the bond were 'related' to the Celotex bankruptcy itself within the meaning of § 1334(b)." Brief for Respondents 22. We conclude, and the dissent agrees, that those proceedings are so related. See *post*, at 317–318, and n. 5. We thus need not (and do not) reach the question whether the granting of the Section 105 Injunction was a "core" proceeding.

Celotex agreed to allow Northbrook to retain the proceeds of a settlement resolving insurance coverage disputes between Northbrook and Celotex. The Bankruptcy Court found that allowing respondents—and 227 other bonded judgment creditors—to execute immediately on the bonds would have a direct and substantial adverse effect on Celotex's ability to undergo a successful reorganization. It stated:

> "[I]f the Section 105 stay were lifted to enable the judgment creditors to reach the sureties, the sureties in turn would seek to lift the Section 105 stay to reach Debtor's collateral, with corresponding actions by Debtor to preserve its rights under the settlement agreements. Such a scenario could completely destroy any chance of resolving the prolonged insurance coverage disputes currently being adjudicated in this Court. The settlement of the insurance coverage disputes with all of Debtor's insurers may well be the linchpin of Debtor's formulation of a feasible plan. Absent the confirmation of a feasible plan, Debtor may be liquidated or cease to exist after a carrion feast by the victors in a race to the courthouse." *In re Celotex,* 140 B. R. 912, 915 (1992) *(Celotex II).*

In light of these findings by the Bankruptcy Court, it is relevant to note that we are dealing here with a reorganization under Chapter 11, rather than a liquidation under Chapter 7. The jurisdiction of bankruptcy courts may extend more broadly in the former case than in the latter. Cf. *Continental Ill. Nat. Bank & Trust Co.* v. *Chicago, R. I. & P. R. Co.,* 294 U. S. 648, 676 (1935). And we think our holding—that respondents' *immediate* execution on the supersedeas bond is at least "related to" the Celotex bankruptcy—is in accord with representative recent decisions of the Courts of Appeals. See, *e. g., American Hardwoods, Inc.* v. *Deutsche Credit Corp.,* 885 F. 2d 621, 623 (CA9 1989) (finding "related to" jurisdiction where enforcement of state-court judgment

by creditor against debtor's guarantors would affect administration of debtor's reorganization plan); cf. *MacArthur Co.* v. *Johns-Manville Corp.*, 837 F. 2d 89, 93 (CA2) (noting that a bankruptcy court's injunctive powers under § 105(a) allow it to enjoin suits that "might impede the reorganization process"), cert. denied, 488 U. S. 868 (1988); *In re A. H. Robins Co.*, 828 F. 2d 1023, 1024–1026 (CA4 1987) (affirming Bankruptcy Court's § 105(a) injunction barring products liability plaintiffs from bringing actions against debtor's insurers because such actions would interfere with debtor's reorganization), cert. denied *sub nom.*, 485 U. S. 969 (1988).[8]

Respondents, relying on our decision in *Board of Governors, FRS* v. *MCorp Financial, Inc.*, 502 U. S. 32 (1991), contend that § 1334(b)'s statutory grant of jurisdiction must be reconciled and harmonized with Federal Rule of Civil Procedure 65.1, which provides an expedited procedure for executing on supersedeas bonds. In *MCorp*, we held that the grant of jurisdiction in § 1334(b) to district courts sitting in bankruptcy did not authorize an injunction against a regulatory proceeding, but there we relied on "the specific preclusive language" of 12 U. S. C. § 1818(i)(1), which stated that "'no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board] notice or order.'" 502 U. S., at 39, 42. There is no analogous statutory prohibition against enjoining the maintenance of a proceeding under Rule 65.1. That Rule provides:

> "Whenever these rules . . . require or permit the giving of security by a party, and security is given in the form

---

[8] We recognize the theoretical possibility of distinguishing between the proceeding to execute on the bond in the Fifth Circuit and the § 105 stay proceeding in the Bankruptcy Court in the Eleventh Circuit. One might argue, technically, that though the proceeding to execute on the bond is "related to" the Title 11 case, the stay proceeding "arises under" Title 11, or "arises in" the Title 11 case. See *In re Monroe Well Serv., Inc.*, 67 B. R. 746, 753 (Bkrtcy. Ct. ED Pa. 1986). We need not and do not decide this question here.

of a bond or stipulation or other undertaking with one or more sureties, each surety submits to the jurisdiction of the court and irrevocably appoints the clerk of the court as the surety's agent upon whom any papers affecting the surety's liability on the bond or undertaking may be served. The surety's liability may be enforced on motion without the necessity of an independent action. . . ."

This Rule outlines a streamlined *procedure* for executing on bonds. It assures judgment creditors like respondents that they do not have to bring a separate action against sureties, and instead allows them to collect on the supersedeas bond by merely filing a motion. Just because the Rule provides a simplified procedure for collecting on a bond, however, does not mean that such a procedure, like the more complicated procedure of a full-fledged lawsuit, cannot be stayed by a lawfully entered injunction.

Much of our discussion dealing with the *jurisdiction* of the Bankruptcy Court under the "related to" language of §§ 1334(b) and 157(a) is likewise applicable in determining whether or not the Bankruptcy Court's Section 105 Injunction has "only a frivolous pretense to validity." *GTE Sylvania*, 445 U. S., at 386 (internal quotation marks and citation omitted). The Fourth Circuit has upheld the merits of the Bankruptcy Court's Section 105 Injunction, see *Willis*, 978 F. 2d, at 149–150, and even the Fifth Circuit in this case did not find "that the bankruptcy court in Florida was necessarily wrong." See *Edwards II*, 6 F. 3d, at 321. But we need not, and do not, address whether the Bankruptcy Court acted properly in issuing the Section 105 Injunction.[9]

---

[9] The dissent contends that Celotex's attempts to set aside the supersedeas bond are "patently meritless" because none of Celotex's claims can impair Northbrook's obligation to respondents. See *post*, at 325. That premise, however, is not so clear as to give the Section 105 Injunction "only a frivolous pretense to validity." There is authority suggesting that, in certain circumstances, transfers from the debtor to another for

We have made clear that " '[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.'" *Walker* v. *Birmingham*, 388 U. S. 307, 314 (1967) (quoting *Howat* v. *Kansas*, 258 U. S. 181, 189–190 (1922)). If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. See *Celotex II*, 140 B. R., at 912. If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal "to the district court for the judicial district in which the bankruptcy judge is serving," see 28 U. S. C. § 158(a), and then to the Court of Appeals for the Eleventh Circuit, see § 158(d). Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law.

The judgment of the Court of Appeals, accordingly, is reversed.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE GINSBURG joins, dissenting.

Today the majority holds that an Article III court erred when it allowed plaintiffs who prevailed on appeal to collect on a supersedeas bond in the face of an injunction issued by a non-Article III judge. Because, in my view, the majority

---

the benefit of a third party may be recovered from that third party. See *In re Air Conditioning, Inc. of Stuart*, 845 F. 2d 293, 296–299 (CA11), cert. denied, 488 U. S. 993 (1988); *In re Compton Corp.*, 831 F. 2d 586, 595 (1987), modified on other grounds, 835 F. 2d 584 (CA5 1988). Although we offer no opinion on the merits of that authority or on whether it fits the facts here, it supports our conclusion that the stay was not frivolous.

attaches insufficient weight to the fact that the challenged injunction was issued by a non-Article III judge, I respectfully dissent.

I

The outlines of the problems I perceive are best drawn by starting with an examination of the injunctions and opinions issued by the Bankruptcy Judge in this case. As the majority notes, Bennie and Joann Edwards (the Edwards) won a tort judgment against Celotex Corporation for damages Bennie Edwards suffered as a result of exposure to asbestos. To stay the judgment pending appeal, Celotex arranged for Northbrook Property and Casualty Insurance Company (Northbrook) to post a supersedeas bond to cover the full amount of the judgment. On October 12, 1990, before Celotex filed its voluntary petition under Chapter 11 of the Bankruptcy Code, the Court of Appeals for the Fifth Circuit affirmed the Edwards' judgment against Celotex. It is undisputed that, when the Edwards' judgment was affirmed, any property interest that Celotex retained in the supersedeas bond was extinguished.

The filing of Celotex's bankruptcy petition on October 12, 1990, triggered the automatic stay provisions of the Bankruptcy Code. See 11 U. S. C. § 362(a). On October 17, 1990, the Bankruptcy Judge, acting pursuant to 11 U. S. C. § 105(a),[1] supplemented the automatic stay provisions with an emergency order staying, *inter alia,* all proceedings "involving any of the Debtors [*i. e.,* Celotex]." App. to Pet. for Cert. A–28. The supersedeas bond filed in the Edwards' case, however, evidences an independent obligation on the part of

---

[1] Title 11 U. S. C. § 105(a) provides:

"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

Northbrook. For that reason, neither the automatic stay of proceedings against the debtor pursuant to § 362(a) of the Bankruptcy Code nor the Bankruptcy Judge's October 17, § 105(a) stay restrained the Edwards from proceeding against Northbrook to enforce Northbrook's obligations under the bond. As the Court of Appeals correctly held, the October 17 order enjoined the prosecution of proceedings involving "the Debtors," but did not expressly enjoin the Edwards from proceeding against Northbrook. See *Edwards* v. *Armstrong World Industries, Inc.*, 6 F. 3d 312, 315 (CA5 1993).

On May 3, 1991, the Edwards commenced their proceeding against Northbrook by filing a motion pursuant to Rule 65.1 of the Federal Rules of Civil Procedure[2] to enforce the supersedeas bond. Several weeks later—on June 13, 1991—the Bankruptcy Court entered a new three-paragraph order enjoining all of Celotex's judgment creditors from collecting on their supersedeas bonds. Paragraph 1 of the order addressed creditors whose appellate process had not yet concluded. Paragraph 2 addressed creditors whose appellate process concluded only after Celotex had filed for bankruptcy. Paragraph 3 applied to judgment creditors, such as the Edwards, whose appeals had concluded before the filing of the bankruptcy petition. Paragraph 3 expressly precluded those creditors from proceeding against any bond "without first seeking to vacate the Section 105 stay entered by this Court." *In re Celotex Corp.*, 128 B. R. 478, 485 (Bkrtcy. Ct. MD Fla. 1991).

---

[2] Rule 65.1 states:

"Whenever these rules . . . require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits to the jurisdiction of the court and irrevocably appoints the clerk of the court as the surety's agent upon whom any papers affecting the surety's liability on the bond or undertaking may be served. The surety's liability may be enforced on motion without the necessity of an independent action."

The opinion supporting that order explained that Paragraphs 1 and 2 rested in part on the theory that the debtor retains a property interest in the supersedeas bonds until the appellate process was complete, and any attempt to collect on those bonds was therefore covered in the first instance by § 362(a)'s automatic stay provisions. The opinion recognized that that rationale did not cover supersedeas bonds posted in litigation with judgment creditors, such as the Edwards, whose appellate process was complete. The Bankruptcy Judge concluded, however, that § 105(a) gave him the power to stay the collection efforts of such bonded judgment creditors. The Bankruptcy Judge contended that other courts had utilized the § 105(a) stay "to preclude actions which may 'impede the reorganization process,'" *id.*, at 483, quoting *In re Johns-Manville Corp.*, 837 F. 2d 89, 93 (CA2), cert. denied, 488 U. S. 868 (1988), or "'which will have an adverse impact on the Debtor's ability to formulate a Chapter 11 plan,'" 128 B. R., at 483, quoting *A. H. Robins Co.* v. *Piccinin*, 788 F. 2d 994 (CA4), cert. denied, 479 U. S. 876 (1986). But cf. n. 12, *infra*. Apparently viewing his own authority as virtually limitless, the Bankruptcy Judge described a general bankruptcy power "to stop ongoing litigation and to prevent peripheral court decisions from dealing with issues . . . without first allowing the bankruptcy court to have an opportunity to review the potential effect on the debtor." 128 B. R., at 484. He concluded that in "mega" cases in which "potential conflicts with other judicial determinations" might arise, "the powers of the bankruptcy court under Section 105 must in the initial stage be absolute." *Ibid.*

I do not agree that the powers of a bankruptcy judge, a non-Article III judge, "must . . . be absolute" at the initial stage or indeed at any stage. Instead, the jurisdiction and the power of bankruptcy judges are cabined by specific and important statutory and constitutional constraints that operate at every phase of a bankruptcy. In my view, those con-

straints require that the judgment of the Court of Appeals be affirmed.

The majority concludes that the Court of Appeals must be reversed because the Bankruptcy Judge had jurisdiction to issue the injunction and because the injunction had more than a " 'frivolous pretense to validity.' " *Ante*, at 312. Even applying the majority's framework, I would affirm the Court of Appeals. As I will demonstrate, the constraints on the jurisdiction and authority of the Bankruptcy Judge compel the conclusion that the Bankruptcy Judge lacked jurisdiction to issue the challenged injunction, and that the injunction has only a " 'frivolous pretense to validity.' " I will also explain, however, why the majority's deferential approach seems particularly inappropriate as applied to this particular injunction, now in its fifth year of preventing enforcement of supersedeas bonds lodged in an Article III court.

## II

In my view, the Bankruptcy Judge lacked jurisdiction to issue an injunction that prevents an Article III court from allowing a judgment creditor to collect on a supersedeas bond posted in that court by a nondebtor. In reaching the contrary conclusion, the majority relies primarily on the Bankruptcy Judge's "related to" jurisdiction, and thus I will address that basis of jurisdiction first. The majority properly observes that, under 28 U. S. C. § 1334(b), the district court has broad bankruptcy jurisdiction, extending to "all civil proceedings arising under title 11, or arising in or related to cases under title 11."[3] The majority also notes cor-

---

[3] The full text of § 1334 reads as follows:

"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

"(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the dis-

rectly that the Edwards' action to enforce the supersedeas bond is within the district court's "related to" jurisdiction,[4] because allowing creditors such as the Edwards "to execute immediately on the bonds would have a direct and substantial adverse effect on Celotex's ability to undergo a successful reorganization." *Ante,* at 310.[5] The majority then ob-

---

trict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

"(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

"(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain or not to abstain made under this subsection is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

"(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U. S. C. § 1334 (1988 ed. and Supp. V).

[4] As § 1334(b) indicates, the district court's "related to" jurisdiction is "original but not exclusive."

[5] I do not take issue with the conclusion that the Edwards' attempt to collect on the supersedeas bond falls within the "related to" jurisdiction of the district court. Cf. 1 Collier on Bankruptcy ¶ 3.01[1][c][iv], p. 3–29 (15th ed. 1994) (hereinafter Collier) (" 'Related' proceedings which involve litigation between third parties, which could have some effect on the administration of the bankruptcy case, are illustrated by suits by creditors against guarantors"). Despite the Edwards' argument to the contrary, it seems to me quite clear that allowing the Edwards to recover from North-

serves that, under 28 U. S. C. § 157(a), the district court may "refe[r]" to the bankruptcy judge "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11."[6]  Thus, the majority concludes that, because the Edwards' action to enforce the

---

brook on the supersedeas bond would have an adverse impact on Celotex because Northbrook would then be able to retain the insurance proceeds that Celotex pledged as collateral when the bond was issued.  Indeed, I am willing to assume that if all of the bonds were enforced, the reorganization efforts would fail and Celotex would have to be liquidated.  In my judgment, however, the specter of liquidation is not an acceptable basis for concluding that a bankruptcy judge, and not just the district court, has jurisdiction to interfere with the performance of a third party's fixed obligation to a judgment creditor.

I also agree with the majority, *ante*, at 308–309, n. 6, that the facts of this case do not require us to resolve whether *Pacor* v. *Higgins*, 743 F. 2d 984 (CA3 1984), articulates the proper test for determining the scope of the district court's "related to" jurisdiction.

[6] The text of § 157 reads in relevant part as follows:

"(a)  Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the Bankruptcy Judges for the district.

"(b)(1)  Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

.  .  .  .  .

"(c)(1)  A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the Bankruptcy Judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the Bankruptcy Judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

"(2)  Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title."

supersedeas bond was within the District Court's "related to" jurisdiction and because the District Court referred all matters to the Bankruptcy Judge, the Bankruptcy Judge had jurisdiction over the Edwards' action.

In my view, the majority's approach pays insufficient attention to the remaining provisions of § 157, and, more importantly, to the decision of this Court that gave rise to their creation. The current jurisdictional structure of the Bankruptcy Code reflects this Court's decision in *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U. S. 50 (1982), which in turn addressed the Bankruptcy Reform Act of 1978, 92 Stat. 2549. The 1978 Act significantly restructured the Bankruptcy Code. The Act created "bankruptcy courts" and vested in them "jurisdiction over all 'civil proceedings arising under title 11 [the Bankruptcy title] or arising in or related to cases under title 11.'" *Northern Pipeline*, 458 U. S., at 54, quoting 28 U. S. C. § 1471(b) (1976 ed., Supp. IV). As the plurality opinion in *Northern Pipeline* observed, "[t]his jurisdictional grant empowers bankruptcy courts to entertain a wide variety of cases," involving "claims based on state law as well as those based on federal law." 458 U. S., at 54. The Act also bestowed upon the judges of the bankruptcy courts broad powers to accompany this expanded jurisdiction. See n. 6, *supra; Northern Pipeline*, 458 U. S., at 55. The Act did not, however, make the newly empowered bankruptcy judges Article III judges. In particular, it denied bankruptcy judges the life tenure and salary protection that the Constitution requires for Article III judges. See U. S. Const., Art. III, § 1.

In *Northern Pipeline*, this Court held that the Act was unconstitutional, at least insofar as it allowed a non-Article III court to "entertain and decide" a purely state-law claim. 458 U. S., at 91 (REHNQUIST, J., concurring in judgment); see also *id.*, at 86 (plurality opinion). The plurality opinion distinguished the revamped bankruptcy courts from prior

district court "adjuncts" which the Court had found did not violate Article III. The plurality noted that, in contrast to the narrow, specialized jurisdiction exercised by these prior adjuncts, "the subject-matter jurisdiction of the bankruptcy courts encompasses not only traditional matters of bankruptcy, but also 'all civil proceedings arising under title 11 or arising in or related to cases under title 11.'" *Id.*, at 85. In addition, prior adjuncts "engaged in statutorily channeled factfinding functions," while the bankruptcy courts "exercise 'all of the jurisdiction' conferred by the Act on the district courts."[7] *Ibid.*

In response to *Northern Pipeline*, Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 amendments), 98 Stat. 333. Section 157 was passed as part of the 1984 amendments. Section 157 establishes two broad categories of proceedings: "core proceedings" and "[n]on-core proceedings." For "all core proceedings arising under title 11, or arising in a case under title 11, referred under [§ 157(a)]," § 157(b)(1) permits bankruptcy judges to "hear and determine" the proceedings and to "enter appropriate orders and judgments." For noncore proceedings "otherwise related to a case under title 11," § 157(c)(1) permits the bankruptcy court only to "hear" the proceedings and to "submit proposed findings of fact and conclusions of law to the district court." See 1 Collier ¶ 3.01[1][c][iv], at 3–28 ("[C]ivil proceedings 'related to cases under title 11'" are "excluded from being treated as 'core proceedings' by 28 U. S. C. § 157(b)(1), and are the subject of special procedures contained in section[s] 157(c)(1) and (c)(2)"). For these "related proceedings," 1 Collier ¶ 3.01[1][c][iv], at 3–28, only the

---

[7] The plurality also noted that, in contrast to the limited powers possessed by prior adjuncts, "the bankruptcy courts exercise all ordinary powers of district courts." 458 U. S., at 85. See n. 6, *supra.*

district court has the power to enter "any final order or judgment."[8]

In my view, the distinction between the jurisdiction to "hear and determine" core proceedings on the one hand and the jurisdiction only to "hear" related proceedings on the other hand is critical, if not dispositive. I believe that the jurisdiction to hear (and yet not to determine) a case under § 157(c)(1) provides insufficient jurisdiction to a bankruptcy judge to permit him to issue a binding injunction that prevents an Article III court from exercising its conceded jurisdiction over the case.[9] The unambiguous text of § 157(c)(1)

---

[8] The district court may enter judgment only after *de novo* review of the bankruptcy judge's recommendation with respect to any matters to which one of the parties has raised a timely objection. See 28 U. S. C. § 157(c)(1).

[9] It should be noted that the Bankruptcy Judge's order cannot be upheld on the ground that it purported to enjoin only the Edwards and thus did not enjoin directly the Article III court. First, the Bankruptcy Judge's orders cannot be interpreted so narrowly. The October 17 order enjoined, *inter alia*, "all Entities" from "commencing or continuing any judicial, administrative or other proceeding involving any of the Debtors." App. to Pet. for Cert. A–28. In my view, the word "entities" includes courts. Indeed, the Bankruptcy Judge's order tracks § 362(a)'s automatic stay provisions, which provide, in part, that the automatic stay is applicable "to all entities" and which enjoin "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." 11 U. S. C. § 362(a)(1). The Courts of Appeals have uniformly held that "entities," as used in § 362, include courts. See, *e. g., Maritime Electric Co.,* 959 F. 2d 1194, 1206 (CA3 1991) ("§ 362's stay is mandatory and 'applicable to all entities', including state and federal courts"); *Pope* v. *Manville Forest Products Corp.,* 778 F. 2d 238, 239 (CA5 1985) ("just the entry of an order of dismissal, even if entered sua sponte, constitutes a judicial act toward the disposition of the case and hence may be construed as a 'continuation' of a judicial proceeding"); *Ellis* v. *Consolidated Diesel Electric Corp.,* 894 F. 2d 371, 372–373 (CA10 1990) (District Court's entry of summary judgment violated § 362(a)'s automatic stay); see also *Maritime Electric Co.,* 959 F. 2d, at 1206 (collecting cases). Cf. 2 Collier ¶ 101.15, at 101–62 to 101–63 ("'Entity' is the broadest of all definitions which relate to bodies or units").

More importantly, though the Bankruptcy Judge's June 13 order enjoins "'the judgment creditor,'" *In re Celotex Corp.,* 128 B. R. 478, 485

requires that the bankruptcy judge's participation in related proceedings be merely advisory rather than adjudicative. In my view, having jurisdiction to grant injunctions over cases that one may not decide is inconsistent with such an advisory role. An injunction is an extraordinary remedy whose impact on private rights may be just as onerous as a final determination. The constitutional concerns that animate the current jurisdictional provisions of the Bankruptcy Code and that deny non-Article III tribunals the power to determine private controversies apply with equal force to the entry of an injunction interfering with the exercise of the admitted jurisdiction of an Article III tribunal.[10]

In sum, my view on the sufficiency of "related to" jurisdiction to sustain the injunction in this case can be stated quite simply: If a bankruptcy judge lacks jurisdiction to "determine" a question, the judge also lacks jurisdiction to issue an injunction that prevents an Article III court, which concededly does have jurisdiction, from determining that ques-

---

(Bkrtcy. Ct. MD Fla. 1991), the order clearly has the same practical effect as if it enjoined the court directly. My objection to the majority's approach does not at all depend on whether the order that prevents the Article III court from exercising its jurisdiction does so directly or indirectly. Instead, my view is simply that a Bankruptcy Judge who lacks jurisdiction to decide an issue may not prevent an Article III court that is ready and willing to exercise its conceded jurisdiction from doing so.

[10] In addition, 28 U. S. C. § 1334(c)(2) provides for mandatory abstention in cases involving state-law claims for which the sole basis of bankruptcy jurisdiction is "related to" jurisdiction. That provision thus makes clear that no order could have been entered over the Edwards' objection if their tort action had been tried in a state rather than a federal court. The Bankruptcy Judge's order, which does not distinguish proceedings to enforce supersedeas bonds that were posted in state-court proceedings, fails to address the implications of this mandatory abstention provision.

I also believe that Congress would have expected bankruptcy judges to show the same deference to federal courts adjudicating state-law claims under diversity jurisdiction, at least when the bankruptcy judge purports to act on the basis of his "related to" jurisdiction and when the federal action can be "timely adjudicated." *Ibid.*

tion.[11]   Any conclusion to the contrary would trivialize the constitutional imperatives that shaped the Bankruptcy Code's jurisdictional provisions.[12]

## III

Petitioner and the majority rely primarily on "related to" jurisdiction.   Indeed, the Court's holding appears to rest almost entirely on the view that a bankruptcy judge has jurisdiction to enjoin proceedings in Article III courts whenever those proceedings are "related to" a pending Title 11 case. See *ante*, at 307–311.   Two footnotes in the Court's opinion, however, might be read as suggesting alternative bases of

---

[11] I agree with the majority that the Bankruptcy Judge's order is a temporary injunction, and thus it is not a "final order or judgment."   *Ante*, at 309, n. 7.   The temporary nature of the injunction, however, is irrelevant.   As I have stated repeatedly in the text, I believe that a statutory scheme that deprives a bankruptcy judge of jurisdiction to "determine" a case also deprives that judge of jurisdiction to issue binding injunctions— even temporary ones—that would prevent an Article III court with jurisdiction over the case from determining it.

[12] The cases on which the Bankruptcy Judge relied are entirely consistent with my approach, and they provide at most indirect support for his order.   In *A. H. Robins Co.* v. *Piccinin*, 788 F. 2d 994, 997 (CA4), cert. denied, 479 U. S. 876 (1986), the challenged injunction was issued by an Article III court ("[T]he district court granted Robins' request for a preliminary injunction"); and in *In re Johns-Manville Corp.*, 837 F. 2d 89, 91–92 (CA2), cert. denied, 488 U. S. 868 (1988), the Court of Appeals found that the Bankruptcy Judge had jurisdiction to enter the injunction in a core proceeding because the insurance policies that were the subject of the injunction were property of the bankruptcy estate.   Thus, those cases do not support the present injunction, which was issued by a non-Article III judge and which affects supersedeas bonds that are concededly not property of the debtor's estate.

I also note that in *Willis* v. *Celotex Corp.*, 978 F. 2d 146 (1992), cert. denied, 507 U. S. 1030 (1993), though upholding the very injunction at issue in this case, the Fourth Circuit engaged in no detailed jurisdictional analysis and entirely omitted any discussion of the significance of the Bankruptcy Judge's non-Article III status.

jurisdiction. See *ante,* at 304–305, n. 4, 311, n. 8. Those two footnotes require a brief response.

In footnote 4 of its opinion, the Court refers to two different claims advanced by Celotex in the bankruptcy proceedings: a claim that "the bonded judgment creditors should not be able to execute on their bonds because, by virtue of the collateralization of the bonds, the bonded judgment creditors are beneficiaries of Celotex asset transfers that are voidable as preferences and fraudulent transfers"; and a claim that "the punitive damages portions of the judgments can be voided or subordinated." There is little doubt that those claims are properly characterized as ones "arising under" Title 11 within the meaning of 28 U. S. C. § 1334(b);[13] however, it does not necessarily follow from that characterization that the Bankruptcy Judge had jurisdiction to issue the injunction in support of the prosecution of those claims. Celotex's complaint was not filed until months after the Bankruptcy Judge's injunction issued. The claims raised in that complaint cannot retroactively provide a jurisdictional basis for the Bankruptcy Judge's injunction.

Moreover, Celotex's attempts to set aside the Edwards' supersedeas bond are patently meritless. It strains credu-

---

[13] "[W]hen a cause of action is one which is created by title 11, then that civil proceeding is one 'arising under title 11.'" 1 Collier ¶ 3.01[1] [c][iii], at 3–26. A perusal of the complaint reveals that Celotex seeks relief under causes of action created by the Bankruptcy Code. See, *e. g.,* Count I (11 U. S. C. § 547(b) (seeking to avoid preferential transfers)); Count III (11 U. S. C. § 548(a)(2)(A) (seeking to avoid constructively fraudulent transfers)); Count IV (11 U. S. C. § 544 (seeking to avoid transactions that would constitute constructively fraudulent transfers under state law)); Count VII (11 U. S. C. § 502 (seeking to disallow punitive damages awards); Count VII (11 U. S. C. § 510(c)(1) (seeking equitable subordination of pending punitive damages awards to the claims of unsecured creditors)). Cf., *e. g.,* 1 Collier ¶ 3.01[1][c][iii], at 3–27 ("[C]ourts interpreting this language have held that 'arising under title 11' includes causes of action to recover fraudulent conveyances"). My acknowledgment of these claims, of course, is not intended as a suggestion that they have merit.

lity, to suggest that a supersedeas bond, posted almost a year and a half before the bankruptcy petition was filed, could be set aside as a preference or as a fraudulent transfer for the benefit of Celotex's adversaries in bitterly contested litigation. Conceivably, Celotex's provision of security to Northbrook might be voidable, but that possibility could not impair the rights of the judgment creditors to enforce the bond against Northbrook even though they might be unwitting beneficiaries of the fraud. That possibility, at most, would be relevant to the respective claims of Northbrook and Celotex to the pledged collateral. Similarly, the fact that the Edwards' judgment included punitive as well as compensatory damages does not provide even an arguable basis for reducing Northbrook's obligations under the supersedeas bond. Even if there is a basis for subordinating a portion of Northbrook's eventual claim against Celotex on "bankruptcy law grounds," that has nothing to do with the Edwards' claim against Northbrook. It thus seems obvious that, at least with respect to the Edwards, Celotex has raised frivolous claims in an attempt to manufacture bankruptcy jurisdiction and thereby to justify a bankruptcy judge's injunction that had been issued over one year earlier. Cf. *Siler* v. *Louisville & Nashville R. Co.*, 213 U. S. 175, 191–192 (1909) ("Of course, the Federal question must not be merely colorable or fraudulently set up for the mere purpose of endeavoring to give the court jurisdiction").

In its footnote 8, the Court appears to suggest that the injunction prohibiting the Edwards from proceeding against Northbrook (described in the footnote as the "stay proceeding") may "aris[e] under" Title 11 or may "arise in" the Title 11 case. Perhaps this is accurate in a literal sense: The injunction did, of course, "arise under" Title 11 because 11 U. S. C. § 105(a) created whatever power the Bankruptcy Judge had to issue the injunction. Similarly, the injunction "arises in" the Title 11 case because that is where it originated. It cannot be the law, however, that a bankruptcy

judge has jurisdiction to enter any conceivable order that a party might request simply because § 105(a) authorizes some injunctions or because the request was first made in a pending Title 11 case. Cf. 2 Collier ¶ 105.01[1], at 105–3 (Section 105 "is not an independent source of jurisdiction, but rather it grants the courts flexibility to issue orders which preserve and protect their jurisdiction"). The mere filing of a motion for a § 105 injunction to enjoin a proceeding in another forum cannot be a jurisdictional bootstrap enabling a bankruptcy judge to exercise jurisdiction that would not otherwise exist.

## IV

Even if I believed that the Bankruptcy Judge had jurisdiction to issue his injunction, I would still affirm the Court of Appeals because in my view the Bankruptcy Judge's injunction has only a "frivolous pretense to validity."

In 1898, Congress codified the bankruptcy laws. Under the 1898 Bankruptcy Act, most bankruptcy proceedings were conducted by "referees" who resolved controversies involving property in the actual or constructive possession of the court, as well as certain disputes involving property in the possession of third parties. In § 2(a)(15) of the 1898 Act, Congress vested in bankruptcy courts the power to:

> "[M]ake such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this Act." Act of July 1, 1898, 30 Stat. 546.

In 1938, Congress clarified both the powers and the limitations on the injunctive authority of referees in bankruptcy by adding to the end of § 2(a)(15), *"Provided, however,* That an injunction to restrain a court may be issued by the judge only." 52 Stat. 843 (emphasis in original).

In 1978, through the Bankruptcy Reform Act, Congress significantly revised the Bankruptcy Code and the role of

bankruptcy referees.[14]  Though stopping short of making bankruptcy referees Article III judges, Congress significantly increased the status, the duties, and the powers of those referees.  For example, as we noted in *Northern Pipeline,* the expanded powers under the new Act included "the power to hold jury trials, . . . to issue declaratory judgments, [and] to issue writs of habeas corpus under certain circumstances."  458 U. S., at 55.  In addition, Congress again provided for broad injunctive powers.  Thus, for example, in the place of § 2(a)(15), Congress added 11 U. S. C. § 105, which provided in relevant part: "The [bankruptcy court] may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  See also 458 U. S., at 55 ("Congress has allowed bankruptcy judges the power . . . to issue all writs necessary in aid of the bankruptcy court's expanded jurisdiction").  Once again, however, along with both this marked expansion of the power of bankruptcy judges and the broad delegation of injunctive authority, Congress indicated its intent to limit the power of those judges to enjoin other courts: Although Congress provided that "[a] bankruptcy court shall have the powers of a court of equity, law, and admiralty," it also provided that bankruptcy courts "may not enjoin another court."  28 U. S. C. § 1481 (1982 ed.).[15]  Thus, for well over 50 years prior to the adoption of the 1984 amendments to the Bankruptcy Code, it was clear that Congress intended to deny bankruptcy judges the power to enjoin other courts.

---

[14] In 1973, bankruptcy "referees" were redesignated as "judges."  See *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.,* 458 U. S. 50, 53, n. 2 (1982).  As did the plurality opinion in *Northern Pipeline,* see *ibid.,* I will continue to refer to all judges under the pre-1978 Act as "referees."

[15] Congress also limited the power of bankruptcy courts to "punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment."  28 U. S. C. § 1481 (1982 ed.).

The 1984 amendments, *inter alia,* repealed § 1481 (and its express limitation on injunctive authority), leaving § 105 as the only source of the bankruptcy judge's injunctive authority.[16] Given that *Northern Pipeline* required a contraction in the authority of bankruptcy judges,[17] and given that the 1984 amendments regarding the powers of the bankruptcy courts were passed to comply with *Northern Pipeline,*[18] it would be perverse—and in my view "frivolous"—to contend that Congress intended the repeal of § 1481 to operate as an authorization for those judges to enjoin proceedings in other courts, thus significantly expanding the powers of bankruptcy judges.

My view of the consequence of the 1984 amendments is reinforced by the structure of § 1481. When Congress placed restrictions on the injunctive power of the bankruptcy courts, it did so in § 1481, right after the clause granting those courts "the powers of a court of equity, law, and admiralty." In my view, this suggests that Congress saw § 1481—and not § 105(a)—as the source of any power to enjoin other courts. Thus, the removal of § 1481 by the 1984 amendments is properly viewed as eliminating the sole source of congressionally granted authority to enjoin other courts. Cf. *In re Hipp,* 895 F. 2d 1503, 1515–1516 (CA5 1990) (concluding on similar reasoning that § 1481, not § 105(a), was the source of the bankruptcy court's power to punish criminal contempt under the 1978 Act).

---

[16] The 1984 amendments also repealed the authorization of bankruptcy judges to act pursuant to the All Writs Act. See 2 Collier ¶ 105.01[1], at 105–3.

[17] The plurality opinion expressly noted its concerns about the bankruptcy judge's exercise of broad injunctive powers. See n. 7, *supra.*

[18] See, *e. g.,* 130 Cong. Rec. 20089 (1984) ("*[Northern Pipeline]* held that the broad powers granted to bankruptcy judges under the Bankruptcy Act of 1978 were judicial powers and violated Article III of the Constitution. The present Bill attempts to cure the problem").

Nor does anything in the 1986 amendments to the Bankruptcy Code alter my analysis.[19] The primary effect of those amendments was to give the bankruptcy judges the power to issue orders *sua sponte.*[20] The 1986 amendments, therefore, do not reflect any expansion of the power of Bankruptcy Judges to enjoin other courts.

The Bankruptcy Judge's error with respect to this injunction thus seems clear, and the injunction falls, therefore, within the exception recognized by the majority for injunctions with only a "frivolous pretense to validity." I recognize, of course, that one may legitimately question the "frivolousness" of the injunction in light of the Fourth Circuit's upholding the very injunction at issue in this case, see *Willis* v. *Celotex Corp.,* 978 F. 2d 146 (1992), cert. denied, 507 U. S. 1030 (1993), and the disagreement of a substantial number of my colleagues. In my view, however, the Bankruptcy Judge's error is sufficiently plain that the Court of Appeals was justified in allowing the Edwards to collect on their bond.[21]

---

[19] See Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. 99–554, 100 Stat. 3088. With respect to 11 U. S. C. § 105, the 1986 amendments added the second sentence of the current version of § 105(a). See 100 Stat. 3097.

[20] The only relevant legislative history regarding the changes to § 105(a) is contained in Senator Hatch's view that the amendment "allows a bankruptcy court to take any action on its own, or to make any necessary determination to prevent an abuse of process and to help expedite a case in a proper and justified manner." 132 Cong. Rec. 28610 (1986).

[21] Neither of the cases cited by the majority, *ante,* at 312–313, n. 9, provides any reason to conclude otherwise. As the majority notes, those cases hold that the bankruptcy trustee may recover from a third party (*e. g.,* the Edwards) funds transferred from the debtor (*e. g.,* Celotex) to another (*e. g.,* Northbrook) for the benefit of that third party. Both cases, however, make clear that the obligation of the Northbrook-like guarantor (a bank in each case) to pay the third party was not at issue. See *In re Compton Corp.,* 831 F. 2d 586, 590 (1987) ("[T]he trustee is not attempting to set aside the post petition payments by [the bank] to [the third party] under the letter of credit as a preference"), modified on other grounds, 835

## V

The Court's holding today rests largely on its view that the Edwards' proper remedy is to appeal the Bankruptcy Judge's injunction, first to the District Court and then to the Court of Appeals for the Eleventh Circuit. The Court concedes, however, that the Edwards need not do so if the Bankruptcy Judge exceeded his jurisdiction, or if the injunction is supported by nothing more than "a frivolous pretense to validity." *Ante*, at 312. For the reasons already stated, I think both of those conditions are satisfied in this case. The non-Article III Bankruptcy Judge simply lacked both jurisdiction and authority to prevent an Article III court from exercising its unquestioned jurisdiction to decide a matter that is related only indirectly to the bankruptcy proceeding. I think it important, however, to add a few brief words explaining why I find this injunction especially troubling and why the injunction should be viewed with a particularly critical eye.

First, the justification offered by the Bankruptcy Judge should give the Court pause. As originally articulated, the justification for this injunction was that emergency relief was required lest the reorganization of Celotex become impossible and liquidation follow. Apart from the fact that the "emergency" rationale is plainly insufficient to support an otherwise improper injunction that has now lasted for more than four years, the judge's reasoning reveals reliance on the misguided notion that a good end is a sufficient justification for the existence and exercise of power. His reference to the need to exercise "absolute" power to override "potential conflicts with other judicial determinations" that might have a "potential impact on the debtor" should invite far

F. 2d 584 (CA5 1988); *In re Air Conditioning, Inc. of Stuart*, 845 F. 2d 293, 295–296 (CA11), cert. denied *sub nom. First Interstate Credit Alliance* v. *American Bank of Martin County*, 488 U. S. 993 (1988). Thus, in my view, those cases cannot form the basis for any nonfrivolous argument that Northbrook may avoid its obligation to pay the Edwards.

more exacting scrutiny of his order than the Court deems appropriate.

Second, that the subject of the injunction was a supersedeas bond makes the injunction suspect. A supersedeas bond may be viewed as putting the integrity of the court in which it is lodged on the line. As the Court of Appeals noted, the Edwards were "promised by the court" that the supersedeas bond would be available if they prevailed on appeal. 6 F. 3d, at 320. For that reason, in my opinion, questions relating to the enforceability of a supersedeas bond should generally be answered in the forum in which the bond is posted.

Moreover, whenever possible, such questions should be resolved before the court accepts the bond as security for collection of the judgment being appealed. After a debtor has benefited from the postponement of collection of an adverse judgment, both that debtor and its successors in interest should normally be estopped from asserting that the judgment creditors who relied to their detriment on the validity of the bond had no right to do so. The very purpose of a supersedeas bond is to protect judgment creditors from the risk that insolvency of the debtor may impair their ability to enforce the judgment promptly. When the bond has served the purpose of forestalling immediate levies on the judgment debtor's assets—levies that might have precipitated an earlier bankruptcy—it is inequitable to postpone payment merely because the risk against which the bond was intended to provide protection has actually occurred. See id., at 319 ("It is manifestly unfair to force the judgment creditor to delay the right to collect with a promise to protect the judgment only to later refuse to allow that successful plaintiff to execute the bond because the debtor has sought protection under the laws of bankruptcy"); In re Southmark, 138 B. R. 820, 827–828 (Bkrtcy. Ct. ND Tex. 1992) (internal quotation marks omitted) ("The principal risk against which such bonds are intended as a protection is insolvency. To hold

that the very contingency against which they guard shall, if it happens, discharge them, seems to us bad law and worse logic"). The inequity that the Court today condones does not, of course, demonstrate that its legal analysis is incorrect. It does, however, persuade me that the Court should not review this case as though it presented an ordinary collateral attack on an injunction entered by an Article III court.[22] Instead, the Court should, I believe, more carefully consider which of the two competing tribunals is guilty of trespassing in the other's domain.

Accordingly, I respectfully dissent.

---

[22] Indeed, one wonders if the same analysis would apply to a bankruptcy judge's injunction that purported to prevent this Court from allowing a successful litigant to enforce a supersedeas bond posted by a nondebtor in this Court pursuant to our Rule 23.4.