**In re W.R. GRACE & CO.,**
**et al., Debtor(s).**

**W.R. Grace & Co., et al., Plaintiffs,**

**v.**

**Margaret Chakarian, Robert H. Locke, Jackie Ellison, Marcia Ellison, Cary Youpee, Rupple K. Perry, The State of Michigan, Alice Smokler, Home Savings Termite Control, Gloria Munoz, Exxon Mobile Corporation et al., and John Does 1–1000, Defendants.**

**Bankruptcy No. 01–01139 (JKF).**
**Adversary No. 01–771.**

United States Bankruptcy Court,
D. Delaware.

April 13, 2007.

Kathleen M. Miller, Smith, Katzenstein & Furlow LLP, Wilmington, DE, for Debtor.

David W. Carickhoff, Jr., James E. O'Neill, Laura Davis Jones, Timothy P. Cairns, Pachulski Ziehl Stang Ziehl Young Jones, Wilmington, DE, Paula Ann Galbraith, Chicago, IL, Scotta Edelen McFarland, Pachulski Stang Ziehl Young Jones, Los Angeles, CA, for Plaintiffs.

Margaret Chakarian, pro se.

John Does, pro se.

Sherry Ruggiero Fallon, Tybout, Redfearn & Pell, Kerri K Mumford, Landis Rath & Cobb LLP, Wilmington, DE, Michael Seth Etkin, Lowenstein Sandler P.C., Roseland, NJ, for Defendants.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the Court is the Debtors' Motion to Expand Their Preliminary Injunction to Include Actions Against the State of Montana (the "Expansion Motion"),[2] which seeks to add within the scope of the preliminary injunction 120[3] actions currently pending against the State of Montana in Montana state courts (the

---

1. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. Doc. No. 359.

3. Debtors' motion, as filed, sought relief with respect to 97 pending State Court Actions.

As of January 30, 2006, Debtors asserted that the number of State Court Actions has grown to 120. Debtors' Motion to Dismiss Appeal, Doc. No. 383, at 2. The actual number of plaintiffs or actions has not been identified in any pleading.

"State Court Actions").[4]  The State of Montana has filed a proof of claim in an unliquidated amount asserting indemnification/contribution from Debtors relating to the State Court Actions.  The preliminary injunction was issued in this adversary to prevent the filing or continued prosecution of actions against third parties that arise from alleged exposure to asbestos indirectly or directly caused by Debtors.[5]  The claimants involved in the State Court Actions ("Montana Plaintiffs") filed an objection to the Expansion Motion.[6]  The Official Committee of Unsecured Creditors submitted a joinder[7] to the Expansion Motion and the State of Montana filed a response stating it did not object to the relief sought unless the relief affects certain of its rights.[8]

On April 2, 2001 (the "Petition Date"), Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Soon after, the United States Trustee appointed the Property Damage Committee, the Official Committee of Asbestos Personal Injury Claimants,

the Official Committee of Unsecured Creditors, and the Official Committee of Equity Holders.  Debtors continue in possession of their property and the management of their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

The preliminary injunction at issue in this proceeding was entered on May 3, 2001, barring the prosecution of currently pending actions against various affiliated entities and third parties whose purported liability was solely derivative of Debtors. Adversary No. 01–771, Doc. No. 32.  On January 22, 2002, the court entered an order modifying the preliminary injunction to include certain additional affiliates and to reinstate the bar against the commencement of new actions against affiliates arising from alleged exposure to asbestos whether indirectly or directly caused by Debtors.[9]  On February 4, 2002, certain Montana Plaintiffs attempted to modify the injunction in order to pursue an alleged direct cause of action claim against

---

4.  Several months prior to the filing of the Expansion Motion, the State of Montana filed a motion for relief from the automatic stay in order to join Debtors as third-party defendants to the State Court Actions.  Motion of State Of Montana For Relief From the Automatic Stay, Bankruptcy No. 01–01139, Doc. No. 8582.  The court's decision regarding the motion for relief from the automatic stay will be entered as a separate opinion and corresponding order.

5.  Order Granting Modified Preliminary Injunction, Adversary No. 01–771, Doc. No. 87.

6.  Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana, Adversary No. 01–771, Doc. No. 363.

7.  Joinder of the Official Committee of Unsecured Creditors in the Debtors' Motion to Expand Their Preliminary Injunction to Include Action Against the State of Montana, Adversary No. 01–771, Doc. No. 359.

8.  Response to Debtors' Motion to Expand Preliminary Injunction to Include Actions Against the State of Montana, Adversary No. 01–771, Doc. No. 362, at 1, 2. "Montana does not object to the relief requested in the Motion to Expand Injunction if the motion does not effect [*sic*] Montana's rights to: (a) object to any plan of reorganization of the Debtors relating to the treatment of Montana under such a plan; (b) preserve its contribution and/or indemnification claims it may have against Debtors relating to the Montana action; (c) take all such actions as Montana shall determine appropriate in order to preserve any claims or causes of actions it may have relating to the Montana actions; and (d) continue to seek relief from the automatic stay in the event the Motion is denied."

9.  Adversary No. 01–771, Doc. No. 87, Order Granting Modified Preliminary Injunction.

Maryland Casualty Company ("MCC"), one of Debtors' insurers.[10] This court denied the motions and was affirmed by the U.S. Circuit Court of Appeals for the Third Circuit. *In re W.R. Grace & Co. (Gerard v. W.R. Grace & Co.)*, 115 Fed. Appx. 565, 2004 WL 2404546 (3d Cir.2004). The Montana Plaintiffs next attempted to pursue their asbestos personal injury claims arising out of Debtors' mining operations in Libby, Montana, by commencing suit against Montana Vermiculite Company ("MVC"), the former owners of Debtors' mining operations.[11] This court amended the injunction to stay the actions against MVC on February 25, 2005.[12]

The various State Court Actions relate to claims arising from the mining and processing of vermiculite containing asbestos within the State of Montana. Most plaintiffs allege periods of employment with Debtors and/or their predecessors from 1947 through 1993. At least 21 of the 120 State Court Actions were filed first only against Debtors and were amended, after Debtors filed bankruptcy, to include the State of Montana. The others were filed against the State of Montana after Debtors were in bankruptcy, at which time actions in state court against Debtors were precluded by the automatic stay. The Montana Plaintiffs assert the same cause of action (negligence in failing to take sufficient action to protect and to warn the plaintiffs about alleged asbestos hazards) against both Debtors and the State of Montana.

According to one of the State Court Actions, *Orr v. State of Montana*, 324 Mont. 391, 106 P.3d 100 (2004), Montana's State Board of Health ("BOH") inspected the Libby mine on a regular basis beginning in 1956.

> During each State inspection between 1956 and 1974, the State inspectors found unsanitary and unhealthful conditions. The State notified Zonolite[13], and later Grace, of the dangerous conditions after each inspection, explaining the seriousness of asbestosis and its likely fatal outcome, but did not inform the Mine workers, including the Miners, of the dangers. With the exception of identifying the hazardous conditions and telling the Mine's owner/managers to correct the problems, the State took no steps to ensure that the Mine's owners/managers responded in a manner that provided a safe working environment.

106 P.3d at 104. In the Nineteenth Judicial District Court of Montana (Lincoln County), the State of Montana obtained dismissal of the *Orr* claim on the basis that the State did not owe a duty to the plaintiffs. On appeal, the Supreme Court of Montana reversed the trial court's dismissal, concluding that the State had a legal duty to the Libby Mine workers,[14] and remanded the case for determination of whether the State of Montana breached that duty.

---

10. Named plaintiffs involved in the State Court Actions were also previously involved in the claims against MCC and Montana Vermiculite Company.

11. *See* Motion to Expand the Preliminary Injunction to Include Actions Against Montana Vermiculite Company, Adversary No. 01–771, Doc. No. 153.

12. Amended Order Granting Motion to Expand Preliminary Injunction Actions Against Montana Vermiculite Company, Adversary No. 01–771, Doc. No. 358.

13. The Zonolite Company was acquired by W.R. Grace in 1963.

14. "We conclude that the State had a statutory duty under [numerous Montana Statutes] to protect the safety and health of the Miners by warning them of known dangers associated with their workplace." *Orr*, 106 P.3d at 111.

Debtors assert that the motion to include Montana within the injunction in this case should be granted because the State of Montana and Debtors share an identity of interest such that a suit against the nondebtor is essentially a suit against the Debtors and the State Court Actions will have an adverse impact on the Debtors' ability to accomplish reorganization.[15] The Montana Plaintiffs make two arguments against including the State in the injunction: (1) the court lacks subject matter jurisdiction to enjoin their separate and independent tort claims against the State of Montana because the State Actions are not related to the bankruptcy within the meaning of 28 U.S.C. § 1334(b), and (2) the Expansion Motion fails to establish grounds for entry of an injunction against a third-party litigant under the stringent standards established by case law.

■■■ The U.S. Court of Appeals for the Fifth Circuit explained that:

Subject matter jurisdiction and power [under § 105 of the Bankruptcy Code] are separate prerequisites to the court's capacity to act. Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. Power under Section 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction.

*Matter of Zale Corp.*, 62 F.3d 746, 751 (5th Cir.1995) (citing *In re American Hardwoods, Inc. (American Hardwoods, Inc. v. Deutsche Credit Corp.)*, 885 F.2d 621, 624 (9th Cir.1989)). While aspects of the § 105(a) analysis may be relevant to "related-to" jurisdiction, the two inquiries are analytically distinct. *In re Combustion Engineering, Inc.*, 391 F.3d 190, 224–25

(3d Cir.2004). Section 105(a) "does not provide an independent source of federal subject matter jurisdiction." *Id.* at 225. Therefore, this court must establish subject matter jurisdiction before considering the merits of a § 105(a) injunction.

Section 1334(b) provides that "... the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 157(a) of title 28 of the United States Code permits the district court to refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

■■■ The generally accepted test for determining whether a bankruptcy court has subject matter jurisdiction over litigation between nondebtor third parties is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). However, as exhibited by *Pacor* itself, application of this test has proven to be most difficult with cases involving indemnification and contribution.

In *Pacor*, John and Louise Higgins initially brought suit against Pacor, a distributor of chemical supplies, in Pennsylvania state court, seeking damages allegedly caused by Mr. Higgins' work-related exposure to asbestos supplied by Pacor. Pacor, in turn, filed a third party complaint impleading the Johns–Manville Corporation, which soon after filed a chapter 11

---

**15.** These two factors, identity of interest and adverse impact, are part of the "unusual circumstances" test articulated in *Matter of Zale Corp.*, 62 F.3d 746, 761 (5th Cir.1995), for determination of whether a § 105(a) injunction is proper. *See also In re Prussia Associates*, 322 B.R. 572 (Bankr.E.D.Pa.2005), and *Matter of Rickel Home Centers, Inc.*, 199 B.R. 498, 501 (Bankr.D.Del.1996).

bankruptcy petition. In determining whether the bankruptcy court had subject matter jurisdiction, the U.S. Court of Appeals for the Third Circuit held that the primary action between the third parties, Higgins and Pacor, would have no effect on the bankruptcy estate.

> At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville.... Even if the Higgins–Pacor dispute is resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. Thus, the bankruptcy estate could not be affected in any way until the Pacor–Manville third party action is actually brought and tried.

*Id.* at 995. The court held that a bare claim of common law indemnity was not enough to establish jurisdiction; any effect on the estate is indirect and contingent on intervening litigation. "[A]ny judgment received by the plaintiff ... could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.* That is, the outcome of the action itself would have no effect on the estate and a separate indemnification action would be required before an effect could be established.

On the other hand, the U.S. Court of Appeals for the Sixth Circuit adopted a different interpretation of the *Pacor* test. In *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir.1996), the Court of Appeals found related-to jurisdiction for a mass tort claim against the shareholders of a chapter 11 debtor because of the possibility of indemnity or contribution claims against the debtor from the shareholders. The court glossed over the rationale and the ultimate outcome of the *Pacor* opinion, looking to the word "conceivable" and stating that:

> A key word in [the] test is 'conceivable.' Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on 'the debtor's rights, liabilities, options, or freedom of action' or the 'handling and administration of the bankrupt estate.'

*Id.* at 491 (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991)). The court held that the possibility of indemnity or contribution claims alone was sufficient to satisfy the *Pacor* test.

In *In re Federal–Mogul Global, Inc.*, 300 F.3d 368 (3d Cir.2002), *cert. denied sub nom. DaimlerChrysler v. Official Committee of Asbestos Claimants*, 537 U.S. 1148, 123 S.Ct. 884, 154 L.Ed.2d 851 (2003), the Court of Appeals for the Third Circuit rejected an argument based on the decision of the Sixth Circuit in *In re Dow Corning*, stating that focusing on the word "conceivable" ignores the precise holding of *Pacor*. "The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit." *Id.* at 382. The bankruptcy court accurately reiterated the holding of *Pacor* stating that jurisdiction exists where "the potential impact on the debtor's estate would have been direct with no intervening adjudication or joinder of issue necessary for judgment against the non-debtor to affect assets, re-prioritize creditors and thwart the bankruptcy court's administration of the estate." *In re Federal–Mogul Global, Inc.*, 282 B.R. 301, 307 (Bankr.D.Del.2002), quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). In

*Federal–Mogul,* jurisdiction in the bankruptcy of the debtor, an automobile parts supplier, was sought for the third party action between personal injury claimants and the automobile companies (including the "Big Three" Auto Makers) who used debtors' asbestos-containing automobile products in their own products. Following its decision in *Pacor,* the court held that related-to jurisdiction was lacking because it would take the intervention of yet another lawsuit before the defendants would have indemnity claims against Federal–Mogul. 282 B.R. at 306. To the extent that the Third Circuit and Sixth Circuit cases conflict regarding the application of the *Pacor* rule to indemnification/contribution claims, this court must follow the case law of the Third Circuit.

■ The position claims in the State Court Actions is nearly identical to the claims in *Pacor* and *Federal–Mogul.* Before any effect on Debtors can be realized, the State of Montana must first be found liable in state court and then pursue its claim for indemnification in bankruptcy court. While the court in *Orr v. State of Montana, supra,* found that a duty existed on behalf of the State, the case was remanded for determination of whether the State of Montana breached that duty. If breach is not found, indemnification/contribution is not possible. If breach is found, the Montana Plaintiffs "would still be obligated to bring an entirely separate proceeding to receive indemnification." *Pacor,* 743 F.2d at 995. Montana law prohibits the State of Montana from litigating or establishing a factual basis (i.e., percentage of comparative fault) against Debtors for either contribution or indemnity during the course of the State Court

Actions.[16] *See* Mont.Code Ann. § 27–1–703 (1997), and *Plumb v. Fourth Judicial Dist. Court,* 279 Mont. 363, 927 P.2d 1011 (1996) (entry of findings against non-party violates substantive due process). A judgment against the State of Montana will not bind Debtors. An intervening adjudication is necessary to affect the estate.

The bankruptcy court in *Federal–Mogul* noted that the decisions in *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), *In re A.H. Robins Co., Inc.,* 828 F.2d 1023 (4th Cir.1987), cert. denied, 485 U.S. 969, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988), and *Halper v. Halper,* 164 F.3d 830 (3d Cir.1999), followed the Third Circuit's interpretation of *Pacor* and the results could be "explained at least in part by the recognition that they each involved property or rights belonging to the estate." 282 B.R. at 307. *Celotex* involved the debtor's cash collateral, *A.H. Robins* concerned insurance proceeds, and *Halper* addressed a guarantee which was available as a creditor's alternative source of recovery. *Id.* The rulings in each of these third party cases would have had a direct effect on the estate. This distinction can also be applied to reject Debtors' assertion that the inclusion in the injunction of the claims against MCC and MVC supports the expansion of the injunction to the State of Montana Actions. MCC was a workers compensation insurer for Debtors and a ruling against MCC would have had a direct impact on the estate. This court in the MVC litigation explained that:

> In this case, if there is a judgment against MVC which resulted in damages for asbestos-related injuries, the Montana Plaintiffs would look to Royal with respect to the insurance policies and

**16.** This court is not asked to, and does not, express an opinion as to the merits of a possible indemnification/contribution claim that might be brought against the estate by the

State of Montana if it is found liable based upon the State's independent duty to third parties.

Debtor's indemnity obligations under their settlement with Royal would be triggered. The indemnity between Debtors and Royal is contractual; in *Pacor* a common law indemnity claim existed and was held to be an insufficient basis for "related to" jurisdiction. *In re W.R. Grace & Co. (W.R. Grace & Co. v. Chakarian)*, 315 B.R. 353, 359 (Bankr. D.Del.2004). Similarly, in *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), cert. denied 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), an injunction was proper because the indemnification rights were absolute; a judgment against the co-defendant indemnitee would effectively bind the debtor. Here, however, as in *Pacor* and *Federal–Mogul*, the State Court Actions will not be binding on the estate and will not have a direct impact on the estate without additional intervening adjudication.

Additionally, in *Orr*, it is the actions of the State of Montana, not Debtors, which are the basis of the claims. The question in *Orr* became one of whether, assuming the State had the information, it had an independent responsibility to distribute or act upon the information for the benefit of the plaintiffs in the litigation. "[T]he State had discretion to determine what information to gather, but once that information was gathered, it had no discretion about whether to distribute it." *Orr*, 106 P.3d at 108.

Based on the discussion above, related-to subject matter jurisdiction does not exist for the purpose of expanding the injunction to include the State Court Actions. Without a finding of such jurisdiction, it is unnecessary to conduct an analysis of whether an injunction under § 105(a) is appropriate. Although, as this represents the Montana Plaintiff's third attempt to pursue these claims, we suspect that this may be yet another ef-

fort at an end run around the automatic stay, in this situation, the Supreme Court of Montana has articulated a cause of action separate and apart from the conduct of Debtors. The motion to expand the preliminary injunction to include the State of Montana will be denied. We note, however, that the automatic stay remains in effect as to the Debtors and their property, including their products, and nothing in this Opinion and Order authorizes relief from the stay as to any allegation, cause of action, etc., against the Debtors' estates, the Debtors, or those parties protected by the preliminary injunction, or against property of the estate or property of the Debtors.

An appropriate order will be issued.