OPINION OF THE COURT
 

 JORDAN, Circuit Judge.
 

 W.R. Grace
 
 &
 
 Co. (“Grace”) and the State of Montana appeal an order from the United States District Court for the District of Delaware affirming an order from the District’s Bankruptcy Court denying Grace’s motion to expand a preliminary injunction. The proposed expansion would have enjoined claims against the State of Montana arising from Grace’s mining operations near Libby, Montana. Both the District Court and the Bankruptcy Court determined that the Bankruptcy Court lacked jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a) to expand the injunction to enjoin those claims and, therefore, denied the motion. For the following reasons, we will affirm.
 

 I. Background
 

 This appeal is the fourth to reach us from Grace’s ongoing efforts to reorganize under Chapter 11 of the Bankruptcy Code, efforts which began in 2001 when Grace sought shelter from liabilities associated with asbestos litigation.
 
 [1]
 
 Disputes in the case have been aggressively litigated, as our previous three opinions indicate.
 
 See In re W.R. Grace & Co.,
 
 316 Fed.Appx. 134 (3d Cir.2009);
 
 In re W.R. Grace & Co.,
 
 115 Fed.Appx. 565 (3d Cir.2004);
 
 In re Kensington Int’l Ltd.,
 
 368 F.3d 289 (3d Cir.2004).
 

 Grace produces specialty chemicals and materials. As part of its business, from 1963 until 1990, Grace operated a vermieu-lite mine ten miles north of Libby, Montana. The mine yielded ore which was used to create zonolite. The zonolite contained tremolite, which is alleged to be an especially carcinogenic variety of asbestos. While the mine was operating, it generated tremolite-laden dust that allegedly caused injury to mine workers, their families, and others in the community. Persons claiming to be injured by that asbestos exposure (the “Libby Claimants”)
 
 [2]
 
 filed suit against Grace in Maryland state court (the “Lawsuit”). As a result of costs associated with such asbestos litigation, Grace decided to file a petition for relief under Chapter 11 of the Bankruptcy Code.
 

 A.
 
 Preliminary Injunctive Relief
 

 On April 2, 2001, the same day that Grace filed its Chapter 11 petition, it commenced an adversary proceeding to halt prosecution of the Lawsuit. The Bankruptcy Court promptly granted a temporary restraining order that included a provision enjoining litigation against Grace and its non-debtor affiliates whose purported asbestos liability derived from Grace’s alleged liability.
 

 On May 3, 2001, the Bankruptcy Court entered a preliminary injunction pursuant to 11 U.S.C. § 105(a), encompassing the conditions of the temporary restraining order. More specifically, it precluded “All Asbestos-Related and Fraudulent Transfer Claims” against affiliated entities, including claims “against Insurance Carriers alleging coverage from asbestos-related liabilities.” (App. at 180-81.) At Grace’s request, the May 3rd order named Grace’s
 
 *168
 
 worker’s compensation insurer, Maryland Casualty Company (“MCC”), as an insurance carrier covered by the injunction. The request was based in part on a 1991 Settlement Agreement between Grace and MCC in which Grace agreed to release and indemnify MCC against any future asbestos-related claims against MCC that arose out of Grace’s alleged liability. On January 22, 2002, the Bankruptcy Court modified the scope of the preliminary injunction to include “several additional claims and parties and to reinstate the bar against the commencement” of new actions against affiliates directly or indirectly related to Grace’s alleged asbestos liability. (App. at 185.)
 

 On February 4, 2002, a group of the Libby Claimants, led by named plaintiff Carol Gerard, sought to modify the preliminary injunction to allow them to pursue claims against MCC. The Bankruptcy Court denied the motion, which, despite a reversal by the District Court, was ultimately affirmed by our Court on appeal.
 
 See In re W.R. Grace & Co. (Gerard v. W.R. Grace & Co.),
 
 115 Fed.Appx. 565 (3d Cir.2004) (“Gerard”).
 

 B.
 
 Present Litigation
 

 Prior to Grace’s April 2, 2001 filing for bankruptcy, the Libby Claimants brought lawsuits in the Montana courts against the State of Montana (the “Montana Actions”), alleging that Montana is liable to them because it was negligent in failing to warn them of the risks of asbestos from the Libby mine. On December 14, 2004, the Montana Supreme Court held that Montana had a duty to “gather public health-related information and provide it to the people.”
 
 Orr v. State,
 
 324 Mont. 391, 106 P.3d 100, 107 (2004);
 
 see also id.
 
 at 110 (“The State’s argument that it owed no duty to the Miners[
 
 3
 
 ] ignores the State’s [duty to] make investigations, disseminate information, and make recommendations for control of diseases and improvement of public health to persons, groups, or the public.” (citations omitted)). Having established that, under Montana law, the State of Montana owed a duty to the Libby Claimants, the Montana Supreme Court remanded for a “determination by the fact-finder of whether the State breached its duty to the Miners, and if so, whether such breach caused the damages claimed by them.”
 
 Id.
 
 at 118.
 

 On June 9, 2005, understandably reluctant to face potential asbestos liability alone, Montana asked the Bankruptcy Court for relief from the automatic stay of litigation against Grace so that it could implead Grace as a third-party defendant in the Montana Actions.
 
 [4]
 
 Grace opposed that motion, but filed its own motion asking the Bankruptcy Court to expand the preliminary injunction to include actions brought against the State of Montana. Grace argued that its motion should be granted because Grace and Montana share an identity of interests such that the Montana Actions were essentially suits against Grace, which would be harmful to Grace’s efforts to reorganize. The Libby Claimants, of course, opposed Grace’s motion, claiming that the Bankruptcy Court lacked jurisdiction to enjoin the Montana Actions.
 
 *169
 
 They also argued that, even if the Court did have jurisdiction, Grace’s motion failed to establish the unusual circumstances or equitable factors required for the issuance of an injunction against a third-party litigant. The State of Montana also filed a response to Grace’s motion, in which it stated that it did not object to the motion unless the relief granted would affect certain of its rights. After a hearing on the motions, the Bankruptcy Court stayed the Montana Actions and took the matter under advisement.
 

 On April 16, 2007, the Bankruptcy Court denied Grace’s motion to expand the preliminary injunction to encompass the Montana Actions, holding that it lacked subject matter jurisdiction to grant the requested relief.
 
 See In re W.R. Grace & Co.,
 
 366 B.R. 295, 301 (Bankr.D.Del.2007). After examining 28 U.S.C. §§ 1334(b) and 157(a), and controlling precedent, the Bankruptcy Court concluded that it did not have “related-to” subject matter jurisdiction over the Montana Actions because Grace’s bankruptcy estate would not be directly affected by the outcome of those lawsuits.
 
 Id.
 
 The Court noted that, before there could be any effect on Grace, “Montana must first be found liable in state court and then pursue its claim for indemnification in bankruptcy court.”
 
 Id.
 

 While the [Montana Supreme Court] found that a duty existed on behalf of the State, the case was remanded for determination of whether the State of Montana breached that duty. If breach is not found, indemnification/contribution is not possible. If breach is found, the Montana Plaintiffs would still be obligated to bring an entirely separate proceeding to receive indemnification. Montana law prohibits the State of Montana from litigating ... against Debtors for either contribution or indemnity during the course of the State Court Actions. A judgment against the State of Montana will not bind Debtors. An intervening adjudication is necessary to affect the estate.
 

 Id.
 
 (citations omitted). The Court effectively denied Montana’s motion to lift the automatic stay, saying that “the automatic stay remains in effect as to the Debtors and their property ... and nothing in this Opinion and Order authorizes relief from the stay as to any allegation.... ”
 
 [5]
 

 Id.
 
 at 302.
 

 The State of Montana and Grace sought leave to appeal, and the District Court allowed them to do so, though it went on to affirm the decision of the Bankruptcy Court.
 
 [6]
 

 See In re W.R. Grace & Co.,
 
 No. 08-246, 2008 WL 3522453 (D.Del. Aug. 12, 2008). Like the Bankruptcy Court, the District Court noted that Grace “will not be bound by a judgment against the State of Montana in the state court actions [because] a separate adjudication is necessary to affect Debtors’ estate.”
 
 Id.
 
 at *4. The Court thus held that “related-to subject
 
 *170
 
 matter jurisdiction does not exist.”
 
 Id.
 
 at *6.
 

 Grace and Montana filed timely notices of appeal to our Court.
 

 II. Discussion
 
 [7]
 

 On appeal, Grace and Montana argue that the Bankruptcy and District Courts erred because “a federal court need not exercise subject-matter jurisdiction over a state-court action in order to enjoin it.” (Grace’s Op. Br. at 12).
 
 [8]
 
 According to Appellants, “[as] long as the federal court is acting in a case over which it has subject-matter jurisdiction, the propriety of an injunction is a matter of the federal court’s remedial authority, not its subject-matter jurisdiction.”
 
 (Id.)
 
 While the Appellants recognize that a “bankruptcy court must establish subject matter jurisdiction before considering the merits of a § 105(a) injunction”
 
 (Id.
 
 at 21 (internal quotation marks and citation omitted)), they rely on our non-precedential opinion in
 
 Gerard
 
 to argue that this requirement “does not mean that the court must establish jurisdiction over the proceeding sought to be enjoined.”
 
 (Id.)
 
 The Libby Claimants respond that the Bankruptcy Court must have subject matter jurisdiction over the Montana Actions to enjoin them, and that the lower courts correctly found that the Bankruptcy Court was without such jurisdiction. They further argue that, should we conclude that jurisdiction exists, a § 105(a) injunction is nevertheless not warranted because Grace and Montana have failed to establish the unusual circumstances or equitable factors required for the issuance of an injunction.
 

 A.
 
 Bankruptcy Subject Matter Jurisdiction Generally
 

 While § 105(a) of the Bankruptcy Code allows a bankruptcy court to issue any order necessary to carry out the provisions of the Code, it “does not provide an independent source of federal subject matter jurisdiction.”
 
 In re Combustion Eng’g, Inc.,
 
 391 F.3d 190, 225 (3d Cir.2004);
 
 see also
 
 11 U.S.C. § 105(a). Thus, before considering the merits of any § 105(a) injunction, a bankruptcy court must establish that it has subject matter jurisdiction to enter the injunction.
 
 See Combustion Eng’g,
 
 391 F.3d at 225 n. 35 (describing the bankruptcy court’s “threshold jurisdictional inquiry”).
 

 Federal district courts “have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Bankruptcy Code], or arising in or related to cases under title 11.” 28 U.S.C. § 1334(b). Section 157(a) of title 28 then permits a district court to refer “any and all proceedings arising under title 11 or arising in or related to a case under title 11” to the bankruptcy judges within the district.
 
 Id.
 
 § 157(a).
 
 *171
 
 There are thus three types of bankruptcy jurisdiction, commonly called “arising under,” “arising in,” and “related to” jurisdiction. Only the last of these is at issue here. Proceedings over which a bankruptcy court can legitimately exercise related-to jurisdiction include “suits between third parties that conceivably may have an effect on the bankruptcy estate.”
 
 Combustion Eng’g,
 
 391 F.3d at 226 (citing
 
 Celotex Corp. v. Edwards,
 
 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)). Broadly worded as that is, however, related-to jurisdiction “is not without limitation.”
 
 Id.
 
 at 228;
 
 see also Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.,
 
 502 U.S. 32, 40, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (noting the “limited authority” Congress has vested in the bankruptcy courts through related-to jurisdiction).
 

 B.
 
 Related-to Jurisdiction
 

 To understand the limits of related-to jurisdiction, it is helpful to look at the case in which we adopted the “any conceivable effect” test for finding such jurisdiction. In
 
 Pacor, Inc. v. Higgins,
 
 743 F.2d 984 (3d Cir.1984), we said,
 

 The usual articulation of the test fodetermining whether a civil proceeding is related to bankruptcy is whether the
 
 outcome of that proceeding could conceivably have any effect on the estate being administered in
 
 bankruptcy.... An action is related to bankruptcy if the outcome could alter the debtor’s rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.
 

 Id.
 
 at 994 (emphasis in original; citations omitted) (overruled on other grounds);
 
 see also Combustion Eng’g,
 
 391 F.3d at 226 (describing the Pacor test as “seminal”). Despite that sweeping language, the facts of the ease demonstrated a crucial limit on the legitimate exercise of subject matter jurisdiction.
 

 In
 
 Pacor,
 
 John and Louise Higgins brought suit in Pennsylvania state court against Pacor, a distributor of chemical supplies, seeking damages from injuries allegedly resulting from Mr. Higgins’s work-related exposure to asbestos supplied by Pacor. 743 F.2d at 986. Thereafter, Pacor filed a third-party complaint im-pleading the Johns-Manville Corporation (“Manville”), which Pacor claimed was the original manufacturer of the asbestos.
 
 Id.
 
 Soon after, Manville filed a Chapter 11 bankruptcy petition.
 
 Id.
 
 When Pacor attempted to remove the Higgins lawsuit to the bankruptcy court where the Manville bankruptcy was pending, we denied removal, holding that “the primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore [cannot establish] ‘related to’ [jurisdiction over that
 
 suit]....” Id.
 
 at 995. We noted that, “[a]t best, [the Higgins-Pacor lawsuit] is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins-Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor.”
 
 Id.
 
 Thus, in
 
 Pacor,
 
 we were clear that an inchoate claim of common law indemnity is not, in and of itself, enough to establish the bankruptcy court’s subject matter jurisdiction.
 
 See id.
 
 (“[A]ny judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification.”).
 

 Eighteen years later, in
 
 In re Federal-Mogul Global, Inc.,
 
 300 F.3d 368 (3d Cir.2002), we reaffirmed the
 
 Pacor
 
 test and
 
 *172
 
 simultaneously reiterated that a potential indemnification claim under common law is not enough to establish a bankruptcy court’s subject matter jurisdiction. We stated that “[t]he test articulated in
 
 Pacor
 
 for whether a lawsuit could ‘conceivably’ have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding
 
 without the intervention of yet another lawsuit.” Id.
 
 at 382 (emphasis added). Applying that rule, we held that the bankruptcy court did not have related-to subject matter jurisdiction because the indemnification claim against the debtors had “not yet accrued and would require another lawsuit before [having] an impact on [the debtor’s] bankruptcy proceeding.”
 
 Id.
 
 Thus,
 
 Federal-Mogul
 
 made it clear that there is no related-to jurisdiction over a third-party claim if there would need to be another lawsuit before the third-party claim could have any impact on the bankruptcy proceedings.
 

 Finally, and more recently, in
 
 Combustion Engineering,
 
 we again emphasized the bounds of the
 
 Pacor
 
 test for related-to jurisdiction.
 
 See
 
 391 F.3d at 190. There, we considered a prepackaged Chapter 11 reorganization plan providing that all asbestos claims against Combustion Engineering and two of its non-debtor affiliates, ABB Lummus Global, Inc. and Basic, Inc. (“Lummus” and “Basic”), were to be channeled through a post-confirmation trust created under § 524(g) of the Bankruptcy Code, to which all three entities were to contribute.
 
 Id.
 
 at 201. The plan also provided for a § 105(a) injunction barring any asbestos-related claims against the three entities.
 
 Id.
 
 One of the issues on appeal was whether the bankruptcy court had the power to enter the injunction as to non-debtors Lummus and Basic. In analyzing that question, we repeated that the
 
 Pacor
 
 test, as clarified by
 
 Federal-Mogul,
 
 requires an inquiry into “whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit.”
 
 Id.
 
 at 227. We also examined other factors advanced by the debtor as grounds for related-to jurisdiction, namely, the alleged unity of interest between the debtor and its affiliates based on the debtor’s potential indemnity obligation to those affiliates, as well as the existence of both a shared production site and shared insurance between the debtor and the affiliates.
 
 Id.
 
 at 230. Even when considering those additional elements of unity between Combustion Engineering and its non-debtor affiliates, we nevertheless held that related-to jurisdiction could not be extended to asbestos claims against those non-debtors.
 

 [A] review of the asbestos-related claims asserted against Combustion Engineering, Basic and Lummus reveals little evidence of derivative liability.... [W]e have rejected “related to” jurisdiction over third-party claims involving asbestos or asbestos-containing products supplied by the debtor when the third-party claim did not directly result in liability for the debtor.... [A]ny indemnification claims against Combustion Engineering ... would require the intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for “related to” jurisdiction.
 

 Id.
 
 at 231-32.
 

 Turning to the facts at hand, the relationship between Grace and the State of Montana is in one crucial respect analogous to the relationships in
 
 Pacor, Federal-Mogul,
 
 and
 
 Combustion Engineering.
 
 Like the debtors in those cases, Grace will not be bound by any judgment against the third party in question. Rather, an entirely separate action would be necessary for any liability incurred by Montana to have an impact on Grace’s estate. Specifically, Montana would first have to be found lia
 
 *173
 
 ble by its state courts and would then have to successfully bring an indemnification or contribution claim against Grace in the Bankruptcy Court. This is precisely the situation in which we have found that related-to jurisdiction does not exist. Indeed, we have stated and restated that, in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must “affect the bankruptcy [] without the intervention of yet another lawsuit.”
 
 Federal-Mogul,
 
 300 F.3d at 382;
 
 Combustion Eng’g,
 
 391 F.3d at 232.
 

 The Appellants’ “unity of interest” argument does not further their cause. In
 
 Combustion Engineering,
 
 we not only repeated that a non-debtor’s potential right of contribution was not enough to establish related-to jurisdiction, we also rejected the idea that shared insurance or a common production site was “a sufficient basis for the kind of unity of interest that could give rise to related to jurisdiction.”
 
 Id.
 
 at 232 (quotations omitted). Here, Montana, of course, is not even a private entity, let alone an entity in the business, as Grace was, of producing asbestos products. Instead, Montana’s potential liability is based on an independent legal duty that Montana’s Supreme Court has decided that the State, as sovereign, owes to its people, namely, a governmental duty to warn about hazards at Grace’s site.
 
 Orr,
 
 106 P.3d at 108.
 

 In short, our recently reaffirmed precedent dictates that a bankruptcy court lacks subject matter jurisdiction over a third-party action if the only way in which that third-party action could have an impact on the debtor’s estate is through the intervention of yet another lawsuit. Here, we are presented with state court actions that have only the potential to give rise to a separate lawsuit seeking indemnification from the debtor. Accordingly, we must affirm the Bankruptcy and District Courts’ conclusion that subject matter jurisdiction does not exist for the purpose of expanding the § 105(a) injunction to preclude the Montana Actions.
 

 C.
 
 Appellants’ Alternative Theories to Support Injunctive Relief
 

 Grace and Montana seem to read our non-precedential decision in
 
 Gerard
 
 to be contrary to the above-described precedent, but they are misguided.
 
 Gerard
 
 is factually distinguishable because it involved an injunction that was already in place as to MCC, and thus the issue in that case was “whether [we] should modify an injunction already entered in the Bankruptcy Court in favor of Grace and MCC.” 115 Fed. Appx. at 567. Here, Grace is seeking to expand the § 105(a) injunction to shelter Montana, a party not already subject to the injunction, against claims that are not akin to anything like the insurance indemnities at issue in
 
 Gerard.
 
 As the District Court noted, “[h]ad the Libby Claimants sought to modify an injunction already issued under section 105(a) as to the State of Montana, the analysis may have been different. However, [here, we are] assessing whether to expand an injunction to include additional parties.... ”
 
 See In re W.R. Grace & Co.,
 
 2008 WL 3522453, at *4. In other words, unlike
 
 Gerard,
 
 in which the issue was whether to limit an injunction that had already been entered, the issue here is whether the Bankruptcy Court has jurisdiction to enjoin entirely new claims against an entirely new party.
 

 It bears re-emphasis that MCC and Grace were parties to a contract in which Grace had agreed to indemnify MCC against any future asbestos-related claims filed against MCC that arose out of Grace’s asbestos liability.
 
 Gerard,
 
 115 Fed.Appx. at 568. Thus, MCC had a clear contractual right to indemnity, which may have presented a more direct threat to
 
 *174
 
 Grace’s reorganization.
 
 [9]
 
 In the present case, by contrast, Montana has only a “potential common law indemnification claim against Debtors pending the outcome of the state action, which falls far short of direct or automatic liability....”
 
 In re W.R. Grace & Co.,
 
 2008 WL 3522453, at *5.
 

 Also, contrary to what Appellants argue,
 
 Gerard
 
 is not the law of the case. At the most basic level,
 
 Gerard
 
 did not involve the same parties and issues,
 
 [10]
 
 as is required for application of the law of the case doctrine.
 
 See Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,
 
 123 F.3d 111, 116 (3d Cir.1997) (“The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation.”) In addition, our decision in
 
 Combustion Engineering
 
 was rendered after
 
 Gerard
 
 and thus constitutes supervening legal authority.
 
 Id.
 
 (recognizing that “supervening new law” is an exception to the law of the case doctrine);
 
 cf. Baca v. King,
 
 92 F.3d 1031, 1035 (10th Cir.1996) (holding that the law of the case doctrine “is not a fixed rule that prevents a federal court from determining the question of its own subject matter jurisdiction in a given case”). Therefore,
 
 Gerard
 
 is not the law of the case, and, in any event, is plainly distinguishable.
 

 Further, to the extent that Grace and Montana argue that the Bankruptcy Court does not need one of the three statutory foundations of bankruptcy jurisdiction — arising under, arising in, or related-to jurisdiction — to expand the § 105(a) injunction to include the State of Montana, we cannot agree. Specifically, Grace and Montana argue that the Bankruptcy Court does not need related-to jurisdiction over the Montana Actions in order to enjoin them, because the Court’s jurisdiction over the adversary proceeding in Grace’s Chapter 11 case is sufficient to provide it with a basis for expanding the § 105(a) injunction.
 
 {See
 
 Grace’s Op. Br. at 17 (“[A] bankruptcy court has subject-matter jurisdiction to adjudicate a motion in an adversary proceeding initiated by a debtor in its own bankruptcy case, regardless of the subject matter of that motion.”).) If we were to accept Grace and Montana’s position, however, a bankruptcy court would have power to enjoin any action, no matter how unrelated to the underlying bankruptcy it may be, so long as the injunction motion was filed in the adversary proceeding. That notion stands in stark contrast to the basic premise that “federal courts are courts of limited jurisdiction; they exercise only the authority conferred on them by Art. Ill and by congressional enactments pursuant thereto.”
 
 Delaware v. Van Arsdall,
 
 475 U.S. 673, 692, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The existence of a bankruptcy proceeding itself has never been and cannot be an all-purpose grant of jurisdiction.
 

 Our conclusion finds support in the Supreme Court’s decision in
 
 Celotex Corp. v. Edwards,
 
 514 U.S. 300, 115 S.Ct.
 
 *175
 
 1493, 131 L.Ed.2d 403 (1995). There, the Supreme Court was asked to determine whether a bankruptcy court had jurisdiction to issue a § 105(a) injunction that had the effect of enjoining an action pending in a district court in another judicial district.
 
 Id.
 
 at 305, 115 S.Ct. 1493. Rather than assuming that the bankruptcy court’s jurisdiction over the adversary proceeding provided it with the necessary jurisdiction to issue the injunction, the Supreme Court observed that bankruptcy court jurisdiction “is grounded in, and limited by, statute.”
 
 Id.
 
 at 307, 115 S.Ct. 1493. Thus, it explained, the bankruptcy court’s jurisdiction to enjoin the other proceeding must be based on the “arising under, arising in, or related to language of §§ 1334(b) and 157(a).”
 
 Id.
 
 (quotation marks omitted). After reviewing several circuit court opinions, including our decision in
 
 Pacor,
 
 the Supreme Court concluded that the bankruptcy court had jurisdiction to issue the injunction, but only because the proceeding was “related to” Celotex’s bankruptcy under the
 
 Pacor
 
 test.
 
 Id.
 
 at 308-10, 115 S.Ct. 1493. If it were the case that a bankruptcy court’s jurisdiction over an adversary proceeding was sufficient in and of itself to give it jurisdiction to enjoin third parties, as Grace and Montana now contend, the Supreme Court’s entire analysis of related-to jurisdiction in
 
 Celotex
 
 would have been superfluous. Clearly it was not. The Supreme Court undertook the analysis it did because a bankruptcy court may not enjoin proceedings between third parties unless those proceedings arise in or under or are related to the underlying bankruptcy.
 
 [11]
 

 Id.
 
 at 307, 115 S.Ct. 1493.
 

 III. Conclusion
 

 In conclusion, our precedent dictates that a federal bankruptcy court does not have related-to jurisdiction over a third-party lawsuit if that lawsuit would affect the bankruptcy proceeding only through the intervention of yet another lawsuit. Grace will not be bound by a judgment against Montana unless there is an additional adjudication. Accordingly, we affirm the judgment of the Bankruptcy Court and the District Court that subject matter jurisdiction does not exist to expand the § 105(a) injunction to include the Montana Actions.
 

 [1]
 

 . At the time of the filing, the debtors consisted of 62 separate entities. For ease of reference, we will refer to the debtors collectively as "Grace.”
 

 [2]
 

 . We follow nomenclature adopted in earlier proceedings by referring to the various plaintiffs as the "Libby Claimants.”
 

 [3]
 

 . The Montana Supreme Court used the term "Miners” to refer collectively to all of the plaintiffs in the suit before it, including "an on-site carpenter, seven former miners from Libby, Montana, and the wife of a former miner, all of whom have been diagnosed with asbestos disease.”
 
 Orr v. State,
 
 324 Mont. 391, 106 P.3d 100, 102 (2004).
 

 [4]
 

 . Pursuant to 11 U.S.C. § 362(a), the filing of a petition such as Grace’s results in an automatic stay, applicable to all entities, of "judicial, administrative, or other action or proceeding against the debtor....” 11 U.S.C. § 362(a)(1).
 

 [5]
 

 . While the Bankruptcy Court did not formally deny the State of Montana’s motion for relief from the automatic stay, the above-quoted language makes it clear that Montana’s motion was not granted, and that the automatic stay remained in place.
 

 [6]
 

 . Before seeking leave to file their interlocutory appeal, Montana and Grace filed motions for reconsideration, to which the Libby Claimants responded with objections. The Bankruptcy Court denied the motions and again held that it did not have subject matter jurisdiction over the Montana Actions. Grace then filed a motion for leave to file an interlocutory appeal from the Bankruptcy Court's order denying expansion of the preliminary injunction. The State of Montana joined in the motion, while the Libby Claimants filed an opposition to it. All of the parties filed briefs regarding the underlying appeal in anticipation of the District Court’s ruling on the merits if it chose to hear the appeal.
 

 [7]
 

 . The Bankruptcy Court had jurisdiction over Grace’s Chapter 11 proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court exercised appellate jurisdiction over the Bankruptcy Court decision under 28 U.S.C. § 158(a). We have appellate jurisdiction under 28 U.S.C. § 1292(a)(1). We exercise the same standard of review as the District Court, which reviewed the Bankruptcy Court’s legal determinations
 
 de novo,
 
 and its factual findings for clear error.
 
 In re Am. Pad & Paper Co.,
 
 478 F.3d 546, 551 (3d Cir.2007). Whether subject matter jurisdiction exists is a question of law, and thus our standard of review is
 
 de novo. Shaffer v. GTE N., Inc.,
 
 284 F.3d 500, 502 (3d Cir.2002).
 

 [8]
 

 . While the language is from Grace's brief, the argument is also the State of Montana’s.
 
 (See
 
 State of Montana's Op. Br. at 20 ("Because the Bankruptcy Court would not have to exercise jurisdiction over the Montana Actions to grant Grace’s requested relief, the Bankruptcy Court need not have 'related to' jurisdiction over
 
 those actions.”).)
 

 [9]
 

 . Although this may have been a more direct threat to the bankruptcy estate — and we have not excavated the
 
 Gerard
 
 record to examine that — we do not mean to imply that contractual indemnity rights are in themselves sufficient to bring a dispute over that indemnity within the ambit of related-to jurisdiction. What will or will not be sufficiently related to a bankruptcy to warrant the exercise of subject matter jurisdiction is a matter that must be developed on a fact-specific, case-by-case basis.
 

 [10]
 

 . There may be overlap, but there is an obvious distinction between an injunction involving Grace's insurer, MCC, and an injunction covering the sovereign State of Montana with respect to Montana’s state-law duties to Montana citizens.
 

 [11]
 

 . Grace and Montana say, "it is well-settled that a federal court may enjoin a state-court action without exercising subject-matter jurisdiction over that action” (Grace's Op. Br. at 14;
 
 see also
 
 State of Montana’s Op. Br. at 20), but the authority they cite — dicta from a Supreme Court case and a case from our circuit — does not support their contention.
 
 See Syngenta Crop Prot., Inc.
 
 v.
 
 Henson,
 
 537 U.S. 28, 34 n. *, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002); and
 
 In re Prudential Ins. Co. of Am. Sales Practices Litig.,
 
 314 F.3d 99, 103 (3d Cir.2002). In
 
 Syngenta,
 
 the Supreme Court suggested in a footnote that a federal court could protect a prior settlement order by issuing an injunction requiring the dismissal of a subsequent, state-court action that was frustrating the order.
 
 Syngenta,
 
 537 U.S. at 34 n. *, 123 S.Ct. 366, 370 n. *. In
 
 Prudential,
 
 we held that an injunction over a state court action was appropriate when the state court action interfered with a settlement approved by a federal court. 314 F.3d at 105. Thus, the most that those cases can be read to imply is that an injunction may be permissible if the enjoined action is an attempt to collaterally attack a judgment in an earlier case over which the federal court undeniably has subject matter jurisdiction. Here, the issue is whether the federal bankruptcy court has subject matter jurisdiction in the first place, which it does not. Moreover,
 
 Prudential
 
 was followed two years later by
 
 Combustion Engineering,
 
 where we unequivocally held that in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must "affect the bankruptcy without the intervention of yet another lawsuit.” 391 F.3d at 232 (citations omitted).