In re THE MORTGAGE STORE, INC., Debtor.

Dane S. Field, Plaintiff,

v.

George W. Lindell; Karen K. Lindell; Mano–Y&M, Ltd., a Texas limited partnership; Hector & Alicia Investments, LLC, a Texas limited liability company; Hector Guerra; John Does 1–50; Jane Does 1–50; Doe Partnerships 1–50; Doe Corporations 1–50; Doe Entities 1–50; and Doe Governmental Entities 1–50, Defendants.

Civil No. 11–00439 JMS/RLP.

United States District Court, D. Hawai'i.

Oct. 5, 2011.

Alika L. Piper, Simon Klevansky, Klevansky Piper, LLP, Honolulu, HI, for Plaintiff.

Allison A. Ito, James A. Wagner, Wagner Choi & Verbrugge, Christopher J. Muzzi, Moseley Biehl Tsugawa Lau & Muzzi, Honolulu, HI, Antonio Villeda, Law Office of Antonio Villeda, McAllen, TX, for Defendants.

## ORDER DENYING DEFENDANTS HECTOR GUERRA AND HECTOR & ALICIA INVESTMENTS, LLC'S MOTION TO WITHDRAW REFERENCE AND MOTION TO TRANSFER VENUE

J. MICHAEL SEABRIGHT, District Judge.

## I. INTRODUCTION

On December 3, 2010, Plaintiff Dane S. Field ("Plaintiff"), as the Chapter 7 trustee in *In re Mortgage Store, Inc.*, Bankr. No. 10–03454, commenced an adversary proceeding against George Lindell, Karen Lindell, Mano–Y&M, Ltd., Hector Guerra, and Hector and Alicia Investments, LLC ("HAI"). As alleged in the Complaint, George Lindell transferred various funds from the Mortgage Store, Inc. (the "Debtor"), to himself and his wife Karen Lindell, which were used to, among other things, purchase real estate from HAI and Hector Guerra. The Complaint in the Adversary Proceeding alleges twelve claims, including claims to have the transfers to HAI and Hector Guerra declared fraudulent pursuant to 11 U.S.C. § 548(a) (Count VI), and pursuant to 11 U.S.C. § 544(b) and Hawaii Revised Statutes ("HRS") § 651 C–4(a) (Count VII).

On July 13, 2011, Defendants HAI and Hector Guerra ("Moving Defendants") filed a Motion to Withdraw Reference and Transfer Venue. Moving Defendants argue that the bankruptcy court lacks jurisdiction to determine the fraudulent transfer claims in light of *Stern v. Marshall*, — U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), such that this action should be withdrawn from the bankruptcy court and the action should be transferred to Texas where the transfers to Moving Defendants occurred. Based on the following, the court DENIES Moving Defendants' Motion.

## II. BACKGROUND

### A. Factual Background

The Adversary Proceeding seeks to, among other things, recover funds from Moving Defendants that are allegedly traceable to Debtor.

As alleged in the Complaint, George Lindell was the president and sole shareholder of the Debtor, which was in the business of soliciting funds to make loans to other individuals to purchase real estate and make investments. Doc. No. 1,[1]

---

1. Unless otherwise indicated, all references to Docket Numbers are to those filings made in

Adversary Proceeding ("AP") No. 10–90146.

Compl. ¶¶ 16–17. Much of the funds collected (in excess of $4.1 million), however, were simply transferred to George and Karen Lindell for their benefit. *Id.* ¶¶ 18, 19. According to an insolvency analysis conducted at the request of Plaintiff, the Debtor became irreversibly insolvent around June 30, 2007 and thereafter used money collected from new investors to pay prior investors (*i.e.*, a Ponzi scheme). *See* Pl.'s Ex. 2, Report of KMH LLP, at 17 and 23 of 49.

In September 2008, George Lindell purchased two Texas apartment complexes (the "Texas Apartments") from HAI and Hector Guerra for $1.8 million and $200,000 respectively. Doc. No. 1, Compl. ¶¶ 35–37. The down payments for the Texas Apartments ($167,614.14 and $3,928.55), are allegedly directly traceable to the Debtor, as well as the other amounts paid to Hector Guerra pursuant to a Note executed by George Lindell in favor of Hector Guerra in the amount of $1.62 million. *Id.* ¶¶ 38–39. As a result, the Complaint asserts that the transfers of the Debtor's funds to Hector Guerra and HAI were for the benefit of George Lindell, and the transfers were made without prudent regard for the financial condition of Debtor and without value received by Debtor. *Id.* ¶¶ 43–44.

## B. Procedural Background

On November 12, 2010, the Debtor filed for Chapter 7 bankruptcy in the United States District Court for the District of Hawaii, and Plaintiff was appointed trustee. *See In re The Mortgage Store*, Bankr. No. 10–03454. Plaintiff asserts that as of the date of the bankruptcy filing, the Debtor owed 113 private individuals and families in excess of ten million dollars. Pl.'s Opp'n at 5.

On December 3, 2010, Plaintiff, as trustee for the Debtor, filed the Adversary Proceeding to recover funds transferred from the Debtor to George Lindell and/or for his benefit. The Complaint includes a total of seven claims regarding transfers made to Defendants. Relevant to the present Motion, Counts VI and VII assert claims directed to funds transferred from the Debtor for George Lindell to purchase and operate the Texas Apartments from Hector Guerra and HAI. Count VI alleges that the transfers of Debtor's funds in connection with the Texas Apartments were fraudulent pursuant to 11 U.S.C. § 548(a), and Count VII alleges that these transfers were fraudulent pursuant to 11 U.S.C. § 544(b) and HRS § 651C–4(a).

The parties have actively litigated the adversary proceeding, with United States Bankruptcy Judge Robert J. Faris determining multiple motions, including granting Trustee's Motion for Temporary Restraining Order to enjoin George and Karen Lindell from transferring assets on March 16, 2011, Doc. No. 42; granting Trustee's Motion for Preliminary Injunction seeking the same relief on April 26, 2011, Doc. No. 69; addressing various Motions for Partial Summary Judgment filed by Trustee, Doc. Nos. 122, 123; and denying Hector Guerra and HAI's Motion to Dismiss Under Rule 12(b)(2), (b)(3) & (b)(6), Doc. No. 68. In denying Hector Guerra and HAI's Motion to Dismiss, Bankruptcy Judge Faris expressly rejected their argument for transfer of venue to Texas. *Id.*

On July 13, 2011, Moving Defendants filed their Motion to Withdraw Reference and Transfer Venue. On September 12, 2011, Plaintiff filed his Opposition. On October 3, 2011, Plaintiff filed a Supplemental Notice of Recent Authorities, and

Moving Defendants filed their Reply.[2] A hearing was held on October 3, 2011.

## III. *STANDARD OF REVIEW*

In general, district courts have original and exclusive jurisdiction over all bankruptcy matters, 28 U.S.C. § 1334, and may refer all bankruptcy matters to a bankruptcy court. 28 U.S.C. § 157(a). Pursuant to Local Rule ("LR") 1070.1(a), "all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges of this district."

 The court may nonetheless withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d), which provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

"The party bringing a motion to withdraw the reference to the bankruptcy court bears the burden of persuasion." *Field v. Levin*, 2011 WL 3477101, at *2 (D.Haw. Aug. 8, 2011) (citing *Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 218 (D.Haw.2006)).

**2.** Moving Defendants' Reply was due by September 19, 2011 and at the October 3, 2011 hearing, counsel for Moving Defendants explained that he failed to timely file his Reply due to inadvertence. Although the court will consider this late-filed Reply, Moving Defendants are warned that they must follow all court rules and deadlines.

## IV. *DISCUSSION*

Moving Defendants argue that withdrawal of reference to the bankruptcy court is mandatory and/or that permissive withdrawal should be granted. Based on the following, the court disagrees.[3]

### A. Mandatory Withdrawal

Plaintiff asserts claims against Moving Defendants under federal and state law seeking to avoid fraudulent transfers, and Congress has expressly provided that bankruptcy courts have jurisdiction to enter judgments on such claims. Specifically, 28 U.S.C. § 157(b)(1) provides that bankruptcy courts "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . ." In turn, 28 U.S.C. § 157(b)(2) outlines sixteen matters that are "core" proceedings, including "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H). In comparison, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court" for non-core proceedings. 28 U.S.C. § 157(c)(1).

As a result of this express statutory language, courts have proceeded under the assumption that bankruptcy courts may adjudicate and enter final judgments in core proceedings. Moving Defendants nonetheless argue that *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), has called into question this entire scheme such that the bankruptcy court does not have jurisdiction to deter-

**3.** Moving Defendants further argue that after withdrawal of reference, the court should transfer the action to the Southern District of Texas. Because the court does not withdraw reference from the bankruptcy court, the court deems this request moot.

mine Plaintiff's fraudulent conveyance claims and withdrawal of reference is therefore mandatory.

*Stern* addressed the constitutionality of bankruptcy courts entering judgments on a different type of core proceeding— "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).[4] *Stern* described this question as a "narrow" one, and held that Congress exceeded its constitutional authority "in one isolated respect" in granting bankruptcy courts the right to enter judgment on such counterclaims. *Id.* at 2620. Specifically, *Stern* held that the bankruptcy courts "lacked the constitutional authority to enter final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620.

Since *Stern*, bankruptcy courts have grappled with whether the reasoning of *Stern* applies to other "core" proceedings such as fraudulent transfer claims. For example, some bankruptcy courts have found that *Stern* does not deprive them of subject matter jurisdiction over fraudulent transfer claims such that the bankruptcy courts may still enter final judgments on these claims. *See, e.g., In re Am. Bus. Fin. Servs.*, 457 B.R. 314, 319 (Bkrtcy. D.Del.2011); *see also In re Innovative Comm. Corp.*, 2011 WL 3439291, at *3 (Bkrtcy.D.Vi. Aug. 5, 2011) (holding that it could enter a final judgment on fraudulent transfer claims asserted through 11 U.S.C. § 548, but would enter a findings and recommendation as to claims asserted through 11 U.S.C. § 544(b)); *see also In re AFY, Inc.*, 2011 WL 3812598, at *1 (Bkrtcy.D.Neb. Aug. 18, 2011) (addressing proceedings to turn over property of the estate pursuant to 28 U.S.C. § 157(b)(2)(E)).

These cases reason that *Stern* "made a point of noting that Congress exceeded its constitutional authority only in 'one isolated respect,'" and that "no other subsection of 28 U.S.C. § 157(b)(2) was found to be unconstitutional." *In re AFY, Inc.*, 2011 WL 3812598, at *1. Indeed, *Stern* explained that it did "not think the removal of counterclaims such as [the Debtor's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute." *Stern*, 131 S.Ct. at 2620; *see also In re Safety Harbor Resort & Spa*, 456 B.R. 703, 717 (Bkrtcy.M.D.Fla. 2011) ("Bankruptcy courts should not invalidate a Congressional statute, such as section 157(b)(2)(F)—or otherwise limit its authority to finally resolve other core proceedings—simply because dicta in *Stern* suggests the Supreme Court may do the same down the road.").

Other courts have found that *Stern's* rationale applies to fraudulent transfer claims such that bankruptcy courts cannot enter judgment and instead must enter

---

4. The specific facts of *Stern*, although splashed on the covers of tabloids and played out in the news media, are not that relevant to *Stern's* actual analysis. Vickie Lynn Marshall (publicly known as Anna Nicole Smith), sought half of her late husband J. Howard Marshall II's estate after his will left her nothing. *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 2601, 180 L.Ed.2d 475 (2011). To that end, Vickie filed an action in Texas state probate court arguing that J. Howard's son, Pierce, had fraudulently induced J. Howard to exclude her from his will. Vickie subsequently filed a bankruptcy petition in the Central District of California, and Pierce filed a complaint in the bankruptcy proceeding for defamation and argued that this defamation claim was not dischargeable. *Id.* In response, Vickie filed a counterclaim for tortious interference with her expected gift from J. Howard. The bankruptcy court ultimately entered judgment in Vickie's favor on her counterclaim—at issue in *Stern* was the constitutionality of the bankruptcy court entering this judgment.

findings and recommendations. *See, e.g., In re Canopy Fin., Inc.,* 2011 WL 3911082 (N.D.Ill. Sept. 1, 2011); *see also In re Teleservices Group, Inc.,* 456 B.R. 318 (Bkrtcy.W.D.Mich.2011). Courts have come to this conclusion in light of the fact that *Stern* relied on *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), in concluding that a debtor's counterclaim is not a matter of "public right" that can be determined outside the judicial branch. *Granfinanciera* held that a fraudulent transfer claim, although technically a "core proceeding," did not assert a public right such that a defendant has a right to a jury trial. *Stern* found particularly relevant that in *Granfinanciera,*

> [w]e reasoned that fraudulent conveyance suits were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.* at 56, 109 S.Ct. 2782. As a consequence, we concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." *Id.* at 55, 109 S.Ct. 2782.

*Stern,* 131 S.Ct. at 2614. Analogizing to *Granfinanciera, Stern* found that a debtor's counterclaim, like a fraudulent transfer claim, is "one under state common law between two private parties" such that the bankruptcy court could not enter final judgment. *Id.* Given *Stern's* reliance on *Granfinanciera,* some courts have reasoned that *Stern* "made clear that the Bankruptcy Court lacks constitutional authority to enter final judgment on [fraudulent transfer claims]," and must instead enter findings and recommendations. *In re Canopy,* 2011 WL 3911082, at *4; *see*

*also In re Teleservices,* 2011 WL 3610050, at *5 ("But Stern, when combined with Granfinanciera, at the very least suggests that a bankruptcy court's entry of a money judgment in connection with an avoided fraudulent transfer is constitutionally suspect.").

Under either line of cases, *Stern* only addresses a bankruptcy court's jurisdiction to enter a judgment, as opposed to findings and recommendations, on a core proceeding over which it has no constitutional authority to enter a final judgment. Indeed, *Stern* discussed only whether the bankruptcy court could enter a final judgment; it did not express any opinion regarding whether the bankruptcy court has authority to conduct pretrial proceedings and submit findings and recommendations. And even if the bankruptcy court does not have jurisdiction to enter a final judgment on the fraudulent transfer claims, mandatory withdrawal of the reference is inapplicable if the bankruptcy court retains the ability to enter a finding and recommendation on these claims. *See, e.g., Kelley v. JPMorgan Chase & Co.,* 464 B.R. 854, 863 (Bankr.D.Minn.2011) (finding that withdrawal of reference of fraudulent transfer claim is not necessary because *Stern* does not suggest that the bankruptcy court cannot conduct pretrial proceedings, and leaving it to the bankruptcy court to determine the appropriate action).

Thus, the question remaining unanswered by *Stern* is the following: if the bankruptcy court cannot enter a final judgment on a particular "core" proceeding, what authority does it have to enter a finding and recommendation on that proceeding? Through 28 U.S.C. § 157(b), Congress granted bankruptcy courts jurisdiction to enter final judgment on "core" proceedings, and through § 157(c)(1) Congress granted bankruptcy courts jurisdiction to enter findings and recommenda-

tions on "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." In other words, where Congress' designation of a "core" proceeding (and the resulting authority for bankruptcy courts to enter a final judgment) is unconstitutional, is the proceeding still considered "core" such that the bankruptcy court has no jurisdiction whatsoever over it, or has such proceeding been struck from the list of illustrative "core" proceedings in § 157(b)(2) such that it falls within the purview of § 157(c)(1)? *Compare In re Canopy*, 2011 WL 3911082, at *4 (concluding that the bankruptcy court had statutory authority to enter a finding and recommendation on a "core" proceeding for which it could not constitutionally enter a judgment); *with In re Blixseth*, 2011 WL 3274042, at *11–12 (Bkrtcy. D.Mont. Aug. 1, 2011) (finding that it had no jurisdiction whatsoever over fraudulent transfer claims where such claims are defined as "core" by 28 U.S.C. § 157(b)(2)(H) and there was no statutory authority to enter a finding and recommendation on such claims). The court finds that *Canopy's* interpretation comports best with Congressional intent and *Stern*.

Between these two possible alternatives, the court must "determine what 'Congress would have intended' in light of [*Stern's*] constitutional holding." *United States v. Booker*, 543 U.S. 220, 246, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (quoting *Denver Area Ed. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 767, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996) (plurality opinion) (Would Congress still "have passed" the valid sections "had it known" about the constitutional invalidity of the other portions of the statute? (internal quotation marks omitted))); *see also United States v. Santos*, 553 U.S. 507, 525, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008) (Stevens, J., concurring) ("[I]t seems to me that judges filling the gap in a statute with such a variety of applications may also do so, as long as they are conscientiously endeavoring to carry out the intent of Congress.").

Congress' intent in enacting 28 U.S.C. § 157 is clear enough on its face—Congress intended that bankruptcy courts, to the extent possible, should adjudicate cases relating to Title 11. *See* 28 U.S.C. § 157(b),(c); *see also Celotex v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate. . . ." (citation and quotation signals omitted)); *In re Sheridan*, 362 F.3d 96, 126 (1st Cir.2004) (stating that Congress' intent in enacting § 157 "was not to shrink the powers of the bankruptcy courts but to extend them to their jurisdictional limits in the wake of *Northern Pipeline*"); *In re Mankin*, 823 F.2d 1296, 1301 (9th Cir.1987) ("Nothing in the legislative history of § 157(b) suggests that Congress enumerated examples of core proceedings in § 157(b)(2) with anything but a view toward expanding the bankruptcy court's jurisdiction to its constitutional limit."). Thus, the court has little difficulty in finding that Congress, if faced with the prospect that bankruptcy courts could not enter final judgments on certain "core" proceedings, would have intended them to fall within 28 U.S.C. § 157(c)(1) granting bankruptcy courts authority to enter findings and recommendations.

■ This construction is consistent with, and can be inferred from, *Stern*—*Stern* referred to its decision as a "*removal* of counterclaims such as [Debtor's] from core bankruptcy jurisdiction." *Stern*, 131 S.Ct. at 2620 (emphasis added). Further, *Stern* expressly acknowledged that its decision should not "meaningfully change[ ] the di-

vision of labor in [28 U.S.C. § 157]." *Id.* Construing *Stern* as suggesting that bankruptcy courts have no authority whatsoever over core proceedings for which they cannot enter final judgments would certainly change bankruptcy courts' ability to effectively preside over these matters and leave district courts to determine these issues in the first instance without the benefit of the bankruptcy court's expertise—such a result would be neither "narrow," "isolated," nor intended by Congress. Thus, to the extent that Congress runs afoul of the Constitution by granting bankruptcy courts the power to enter final judgments on particular "core" proceedings as defined by 28 U.S.C. § 157(b)(2), the court construes those proceedings as no longer part of that definition, *i.e.,* no longer "core" proceedings, such that the bankruptcy court has authority to enter findings and recommendations pursuant to 28 U.S.C. § 157(c)(1).

■ In sum, the court finds that even if the bankruptcy court does not have jurisdiction to enter a final judgment on the fraudulent transfer claims—an issue this court need not decide at this time[5]—the bankruptcy court may enter findings and recommendations. As a result, Moving Defendants' Motion for mandatory withdrawal is DENIED.

## B. Permissive Withdrawal

■ The court may withdraw reference to the bankruptcy court "for cause shown." 28 U.S.C. § 157(d). This standard is high—"[p]ermissive withdrawal is permitted only in a limited number of circumstances." *Hawaiian Airlines, Inc.,* 355

B.R. at 223 (citing *In re Ponce Marine Farm, Inc.,* 172 B.R. 722, 724 n. 2 (D.P.R. 1994)). In determining whether cause exists, the court may consider "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Vacation Vill., Inc. v. Clark Cnty., Nev.,* 497 F.3d 902, 914 (9th Cir.2007) (citing *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers,* 124 F.3d 999, 1008 (9th Cir.1997)).

■ Moving Defendants argue that these factors weigh in favor of withdrawal because (1) the fraudulent transfer claims are non-core proceedings pursuant to *Stern,* (2) withdrawing reference will prevent possible redundancy of de novo review of the bankruptcy court's findings and recommendations, (3) there are no companion cases currently before the bankruptcy court, (4) Moving Defendants are not forum shopping, and (5) Moving Defendants have not consented to a jury trial. Moving Defs.' Mot. at 6–9. Even if Moving Defendants' claims were construed as non-core (again, which the court expressly does not determine at this time), there are no companion cases, and Defendants are not forum shopping, the court rejects that consideration of all the factors weigh in favor of withdrawal of reference.

Specifically, the bankruptcy court has "unique knowledge of Title 11" and has a high level of familiarity with this action given the multiple motions it has already presided over. *See In re Healthcentral.com,* 504 F.3d 775, 787–88 (9th Cir. 2007) (stating that the system of having

---

5. If the parties so choose, they may raise the issue of whether Bankruptcy Judge Faris may enter a judgment or findings and recommendations on these claims in the first instance. The court expressly leaves to Bankruptcy Judge Faris to determine whether he may enter a judgment or findings and recommendations on these claims, and nothing in this Order should be construed as suggesting which of these possible paths the court believes is correct.

the bankruptcy court hear Title 11 actions "promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them"). Withdrawal of reference at this stage would result in this court losing the benefit of the bankruptcy court's experience in both the law and facts, resulting in an inefficient allocation of judicial resources. *See Birdsell v. Schneider,* 2011 WL 1540145, at *2 (D.Ariz. Apr. 22, 2011) ("Withdrawing the action would also be wasteful of the parties' resources and jeopardize the uniformity of bankruptcy administration, because both the district court and bankruptcy court would have to become familiar with facts about the estate and make determinations regarding the parties' rights and obligations."); *Nat'l Hockey League v. Moyes,* 2010 WL 3719289, at *2 (D.Ariz. Sept. 15, 2010) ("The majority of courts in this District addressing this issue have held that bankruptcy courts generally are best equipped to manage all pretrial issues and that the ultimate need for district court adjudication is speculative."). Further, no jury demand has been made, and even if made, the appropriate course of action is to defer withdrawal of the action until the actual time for a jury trial. *See, e.g., In re Healthcentral.com,* 504 F.3d at 787; *Field,* 2011 WL 3477101, at *3 (finding that withdrawal of reference would be premature until the case is ready for trial); *Birdsell,* 2011 WL 1540145, at *2 ("[E]ven where withdrawal of the reference may ultimately be necessary, we may choose not to withdraw immediately so as to take advantage of the bankruptcy court's familiar[ity] with the facts and expertise in the law."). Given these considerations, Moving Defendants have not established cause for withdrawal of reference.

The court therefore DENIES Moving Defendants' Motion for permissive withdrawal.

## V. CONCLUSION

Based on the above, the court DENIES Moving Defendants' Motion for Withdrawal of Reference. Because the withdrawal of reference is denied, the court DEEMS MOOT Moving Defendants' Motion to Transfer Venue.

IT IS SO ORDERED.